Charles **BAKER** et al., Plaintiffs,

v.

**F & F INVESTMENT** et al., Defendants.

**No. M 8 85.**

United States District Court,
S. D. New York.

Feb. 16, 1972.

John G. Stifler, Jenner & Block, Chicago, Ill., for plaintiffs; Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel.

Pollack & Singer, New York City, for respondent Alfred Balk; Martin I. Kaminsky, New York City, of counsel.

OPINION

BONSAL, District Judge.

Plaintiffs move for an order pursuant to Rule 37 of the Federal Rules of Civil Procedure compelling the witness Alfred Balk to answer questions propounded to him during oral deposition taken on June 7, 1971 pursuant to subpoena.

On July 14, 1962, the *Saturday Evening Post* published an article written by Alfred Balk entitled "Confessions of a Block-Buster—A Chicago real-estate agent who moves Negro families into all-white blocks reveals how he reaps enormous profits from racial prejudice", "By Norris Vitchek as told to Alfred Balk." Mr. Balk's article describes "block-buster" activities in the Chicago area, charging unscrupulous landlords and real estate agents with preying upon the Negroes of that city. At the time he wrote his article, Mr. Balk was a resident of Illinois. He has since moved to

New York, where he was served with a subpoena by the plaintiffs to take his deposition.

Mr. Balk's testimony is sought in connection with plaintiffs' discovery in a class action pending in the Northern District of Illinois. The details of the Chicago action are described in an opinion of Judge Will reported at 300 F. Supp. 210 (N.D.Ill., E.D.1969) under the title, Contract Buyers League et al., Plaintiffs, v. F & F Investment et al., Defendants, No. 69 C 15. Plaintiffs, suing as a class, had previously been granted the right to maintain a class action under Rule 23 of the Federal Rules of Civil Procedure. Judge Will denied defendants' motions to dismiss Count I charging defendants with violation of the Civil Rights Act of 1866 (42 U.S.C. §§ 1981, 1982, 1983 and 1985(3)) and of the Thirteenth and Fourteenth Amendments to the United States Constitution; Counts II and III charging violations of the Federal antitrust laws and of the antitrust laws of Illinois; and Count V charging violation of the Illinois common law (on the ground of pendent jurisdiction to Counts I, II and III).

At the deposition, Mr. Balk testified that he wrote the article; that the name "Norris Vitchek" was fictitious; that he had an interview with a man to whom he gave the fictitious name of Norris Vitchek; that his interviews took place during the year 1962; that the interviews took place in Chicago or Evanston, Illinois; and that Norris Vitchek was one man. Mr. Balk refused to answer questions as to the identity of the man called Norris Vitchek or as to how many times he had interviewed him, or whether he was a Chicago resident or whether he had disclosed his true identity to anyone else. In refusing to answer these questions, Mr. Balk stated that his answers "might tend to reveal the identity of the author, which I and the editors of the magazine are sworn not to do, as journalists, because that was the condition of our obtaining the article." Mr. Balk stated that he took this position "under the First Amendment, which

protects freedom of the press, which includes not only the right to disseminate, but the right to gather information."

Plaintiffs contend that disclosure of Mr. Balk's source is essential to their discovery in the Chicago action. Plaintiffs rely on Garland v. Torre, 259 F.2d 545 (2d Cir. 1958), cert. denied, 358 U. S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), where the Court of Appeals, in an opinion by Judge Stewart, now Mr. Justice Stewart, held that in a libel action brought by Judy Garland against Columbia Broadcasting System Inc. (CBS), Marie Torre, a newspaper columnist who had printed the alleged defamatory remarks in her column and attributed them to a CBS executive, could be compelled to reveal her source.

However, *Torre* is not dispositive here. In *Torre*, Miss Garland charged that CBS "had made false and defamatory statements about her and authorized, requested and induced their publication in newspapers and elsewhere." *Torre, supra* at 547. CBS, in depositions of two of its executives, denied that it made or caused the defamatory statements to be published in Miss Torre's column, so that the source of the statements in Miss Torre's article was essential to Miss Garland's libel action. The court noted that:

> ". . . [W]e are not dealing here with the use of the judicial process to force a wholesale disclosure of a newspaper's confidential sources of news, nor with a case where the identity of the news source is of doubtful relevance or materiality. . . .
> The question asked of the appellant [Torre] went to the heart of the plaintiff's claim. We hold that the Constitution conferred no right to refuse an answer."

Plaintiffs here do not claim that Mr. Balk was a party to the alleged deprivation of their rights. On the contrary, Mr. Balk's article first brought to the public's attention the alleged violation of plaintiffs' rights. Plaintiffs' purpose in seeking to require Mr. Balk to disclose his source is to aid them in their discov-

ery in putting the finger on one of the alleged wrongdoers.

Mr. Balk relies on Caldwell v. United States, 434 F.2d 1081 (9th Cir. 1970), cert. granted, 402 U.S. 942, 91 S.Ct. 1616, 29 L.Ed.2d 109 (1971), where the Court of Appeals for the 9th Circuit held that a newspaper reporter could not be compelled to appear and testify before a Grand Jury investigating alleged criminal activities attributed to the Black Panther movement since this would require the reporter to disclose his sources of information, which he had promised not to disclose. Balk urges that Caldwell is "clearly the leading federal case on the question presented", and therefore, that federal case law provides him with a journalist's privilege not to disclose his source.

Balk's reliance on Caldwell is misplaced since the Ninth Circuit Court of Appeals took pains to explain that

" . . . the rule of this case is a narrow one. It is not every news source that is as sensitive as the Black Panther Party has been shown to be respecting the performance of the 'establishment' press or the extent to which that performance is open to view. It is not every reporter who so uniquely enjoys the trust and confidence of his sensitive news source." (p. 1090)

Moreover, Caldwell was dealing with a Federal Grand Jury proceeding where the government had an interest not here present. The court held only that—

"[W]here it has been shown that the public's First Amendment right to be informed would be jeopardized by requiring a journalist to submit to secret Grand Jury interrogation, the Government must respond by demonstrating a compelling need for the witness's presence before judicial process properly can issue to require attendance." (p. 1089)

■ Since plaintiffs allege violations of their Federal constitutional rights, the issue must be resolved under Federal law. However, in making its determination, the court will consider state public policy. See Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). Both Illinois and New York now have statutes protecting a newspaper reporter from being required to disclose his source. (New York Civil Rights Law, McKinney's Consol.Laws, c. 6, Section 79-h, effective May 12, 1970; 51 Smith-Hurd Illinois Annotated Statutes, Section 111 et seq., effective September 23, 1971.) Both statutes were enacted after the publication of Mr. Balk's article, but before the bringing of this motion. In determining the issue under Federal law, it is immaterial whether the Illinois or New York, or both statutes are considered since both enunciate substantially the same public policy. Compare Application of Cepeda, 233 F.Supp. 465 (S.D.N.Y.1964).

The New York Civil Rights Law, Section 79-h(b) provides in pertinent part as follows:

" . . . [N]o professional journalist . . . shall be adjudged in contempt by any court . . . for refusing or failing to disclose . . . the source of any such news coming into his possession in the course of gathering or obtaining news for publication . . . in a newspaper, magazine, or for broadcast by a radio or television transmission station or network, by which he is professionally employed or otherwise associated in a news gathering capacity." *

* In construing the New York statute, the Supreme Court, New York County, recently held:

" . . . [I]n order to raise successfully the claim of privilege, two essential elements must be established;

First, the information or its sources must be imparted to the reporter under a cloak of confidentiality, i. e. upon an understanding, express or implied, that the information or its sources will not be disclosed; and second, that the information or its sources must be ob-

The Illinois statute provides that:

"No court may compel any person to disclose the source of any information obtained by a reporter during the course of his employment except as provided in this Act."

The Illinois statute follows the teaching of *Torre* in providing that the privilege is not available in a libel or slander action in which a reporter is a party defendant. The Illinois statute also provides for a "divestiture" of the privilege by an application to the court in the county where the information is sought divesting the reporter of the privilege and ordering him to disclose his source of information. Before the privilege can be "divested", the court must find that all other available sources of information have been exhausted and that disclosure of the information sought is essential to the protection of the public interest involved.

 In *Torre, supra* at 548, the issue of whether a reporter should be required to disclose his source turns on "whether the interest to be served by compelling the testimony of the witness in the present case justifies some impairment of this [freedom of the press] First Amendment freedom." A reporter does not have an absolute right under the First Amendment not to disclose his source, based on "the public's right to know", since the public is given no corresponding protection that the reporter is reporting his source correctly or that the "source" is not a subterfuge. On the other hand, if a reporter is required in all cases to disclose his source, his sources would inevitably dry up, particularly where the information was received in confidence, with the consequence that the freedom of the press and the public's right to know would be impaired.

Plaintiffs have not shown that all other available sources of information have been exhausted or that the disclosure of his source by Mr. Balk is essential to the protection of the public interest involved. The facts related in Mr. Balk's article and the pictures therein certainly provide leads to the plaintiffs in obtaining discovery. Further relevant information could be obtained by a search of the title records and the mortgage records in the county in which plaintiffs claim the unlawful activities took place.

Balancing these interests in this case, and the belief that plaintiffs have other ways of obtaining the information which they seek, the court concludes that Mr. Balk should not be required to disclose his confidential source. This determination is consistent with the First Amendment and the public policy of Illinois and New York. Therefore, plaintiffs' motion for an order compelling Mr. Balk to answer the questions propounded to him at his deposition is denied.

It is so ordered.

tained in the course of gathering of news for publication." Matter of Wolf

and the Village Voice, Inc., N.Y.L.J., Jan. 27, 1972, Birns, J.