No. 46,924

THE STATE OF KANSAS, ex rel., KEITH SANBORN, district attorney of Sedgwick County, *Appellee,* v. KOSCOT INTERPLANETARY, INC.; GLENN W. TURNER, chairman of the board of Koscot Interplanetary, Inc.; MIDWAY USA KOSCOT DISTRIBUTOR, INC., *Appellants.*

(512 P. 2d 416)

Opinion filed July 14, 1973.

*Richard H. Rumsey,* of Rumsey and Cox, of Wichita, argued the cause and was on the brief for the appellants.

*Lance Burr,* assistant attorney general, and *Jack Williams,* assistant district attorney, argued the cause, and *Keith Sanborn,* district attorney, was with them on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a civil action brought by a district attorney under the Kansas Buyer Protection Act. (K. S. A. 1972 Supp. 50-601, *et seq.*). Under this Act certain business practices are declared unlawful and the district courts of the state are authorized to impose sanctions in actions brought against those who engage in such unlawful practices. The sanctions authorized under the statute in cases of substantial and willful violation include injunctive relief, orders for the return of money or property and revocation of any license or certificate of authority to do business in Kansas. (K. S. A. 1972 Supp. 50-608.)

The defendants were charged with engaging in two business practices made unlawful by the Act. The first is defined in 50-602, *supra,* as follows:

"The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice: . . ."

This will be referred to as the fraud or misrepresentation section of the statute.

The second unlawful practice is defined in 50-603, *supra,* as follows:

"The use or employment of any chain referral sales technique, plan, arrangement or agreement whereby the buyer is induced to purchase merchandise of a cash sale price in excess of fifty dollars ($50) upon the seller's promise or representation that if buyer will furnish seller names of other prospective buyers of like or identical merchandise that seller will contact the named prospective buyers and buyer will receive a reduction in the purchase price by means of a cash rebate, commission, credit toward balance due or any other consideration, which rebate, commission, credit or other consideration is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers, is declared to be an unlawful practice within the meaning of this act."

This will be referred to as the provision against chain referral or pyramid sales schemes.

At the conclusion of a lengthy trial the district court determined that the defendants had engaged in both unlawful business practices within this state, that the violations were substantial and willful and that the extreme sanctions authorized by the statute should be imposed. The certificates of corporate authority to do business in the state were revoked. The individual defendant and all other officers and employees of the companies in Kansas were permanently enjoined from engaging in the merchandising of Koscot cosmetics in Kansas. Koscot Interplanetary, Inc. and Glenn W. Turner were ordered to make restitution of all money received by them from the sale of all positions, except for those of beauty advisors. A receiver was appointed to receive and disburse such money to those claimants filing claims within a stated period of time. (Appellee in his statement of facts says, and it has not been denied by appellants, that 524 separate claims totalling over $800,-000.00 have been filed but the receiver has received no money from the appellants.)

The defendants have appealed this judgment attacking the sufficiency of the evidence, the constitutionality of the act and various procedural matters. The state has attempted to cross-appeal from the refusal of the trial court to determine that the scheme also violated the securities law of Kansas and that it constituted a lottery in violation of the constitution and the statutes of this state. We will dispose of the cross-appeal first.

The state filed timely notice of cross-appeal on May 8, 1972. It thereafter wholly and completely neglected to serve and file a statement of points on which it intended to rely and which would be briefed in the cross-appeal as required by Rule No. 6 (*d*) of this court. (Rules of the Supreme Court, 209 Kan. xxiii.) Appellants' brief was filed December 13, 1972, and the state's brief, as appellee and cross-appellant, was due as required by Rule No. 8 (*a*) and (*f*) of this court on January 22, 1973. With this court's permission and without complying with Rule No. 8 (*d*) the state's brief was filed on June 5, 1973, the day before the case had been set for oral argument. Under these circumstances cross-appellee had no opportunity to answer the questions which the state desires to raise in its cross-appeal and this court was deprived of the help which might be afforded in a brief by cross-appellee. Accordingly the cross-appeal is dismissed for failure to comply with rules of

appellate procedure, Rules No. 6 (*d*), No. 8 (*a*), (*d*) and (*f*). (Rules of the Supreme Court, 209 Kan. xxiii, xxvi and xxvii. See also *Bolyard v. Zimbelman,* 195 Kan. 130, 402 P. 2d 813.)

We now turn to the appeal of the defendants. In view of the sufficiency of evidence question raised we must summarize the facts disclosed by the evidence. The appellant Koscot Interplanetary, Inc. (Koscot) is a Florida corporation which has been doing business in the state of Kansas for a number of years. The appellant Glenn W. Turner, a resident of Florida, is the chairman of the board of directors of Koscot and the organizer of the company. The appellant Midway USA Koscot Distributor, Inc. (Midway) of Wichita is a Kansas corporation, organized and owned by Kansas directors and supervisors of Koscot. Midway is a local wholesale firm which was organized to assist in storing and distributing Koscot products in Kansas. The Koscot cosmetics products are manufactured exclusively in Koscot's plant in Florida. The expansion and growth of Koscot is built upon a scheme for the sales of positions with the company which sales authorize individuals to sell not only the cosmetic products but also additional positions with the company. When another person purchases into the company the one instrumental in selling him the position receives a percentage of all amounts the new recruit pays into Koscot for his position and for merchandise.

There are three groups of persons holding positions in the company in Kansas. The persons in the first group are called beauty advisors and they handle the retail sales of cosmetics, usually on a door-to-door basis. The persons in the second group are called supervisors (or sub-distributors) and they may enlist one or more beauty advisors to work under them. The persons in the third group are called directors (or distributors) and they supply their supervisors who in turn supply the beauty advisors with cosmetics. The supervisors whom they supply are persons recruited by the directors under whom they work.

A supervisor receives a 15% commission on the gross sales of all his beauty advisors and there is no limitation placed upon the number of such recruits he may bring into the company. A director receives a 10% commission on the gross sales of the supervisors he recruits and a 25% commission on the gross sales of all beauty advisors he recruits. Each new recruit is required to pay a certain sum of money into the company to obtain his or her position with the company and receives a certain amount of merchandise for

resale. A beauty advisor pays $50.00 and receives that amount of merchandise. A new supervisor pays $2,000.00 to the company and receives in return the right to and benefits of recruiting beauty advisors plus $2,000.00 in merchandise. A new director pays $5,000.00 to the company and receives in return the right to and benefits of recruiting both supervisors and beauty advisors plus $3,000.00 in merchandise. A recruiting bonus is earned as each new recruit is brought into the organization plus a commission on the merchandise order the recruit must place with the company.

A standard training manual is published and distributed on a national basis by Koscot to instruct its beauty advisors, supervisors and directors on how meetings should be structured and handled to recruit new positions with the company. This manual was used in the present case. Recruitment meetings are referred to in the manual as "Golden Opportunity Meetings." Prospective recruits are brought to these meetings as guests and on the basis of a mathematical progression of earnings said to be possible through recruitment and sales of positions with the company these guests are indoctrinated by means of illustrations in the manual and sold positions. At these meetings the company executives explain in glowing terms the organizational structure and profit potential of this unique marketing system in which each person profits from his own sales and from the sales of future recruits. Mathematical examples based upon average ability to recruit others into the system are used to show how profits may multiply geometrically as the organizational structure grows and pyramids. A hypothetical beauty advisor is said to be able to make $720.00 per month after three months. A hypothetical supervisor staffed with hypothetical beauty advisors he has recruited is able to make $1,440.00 a month after only two months. It is then assumed the supervisor will become a hypothetical director and make $4,200.00 in his third month with the company. Further it is indicated a hypothetical director may make another $26,000.00 a year by recruiting hypothetical supervisors and directors. The training manual followed at these meetings indicates the recruits are to be told a director can reap tremendous profits without ever selling a single cosmetic product to a consumer if he concentrates on recruitment. This manual is used by Koscot in many other states besides Kansas.

In preparing for the trial the state enlisted the expertise of Dr. John R. Darling in the field of marketing and business administration. He is a teacher, author and consultant in this field. He

studied the organizational structure indicated in the training manual and worked with certain computer print outs covering the retail sales of the various beauty advisors, supervisors and directors of Koscot in Kansas. Based upon his comprehensive studies he determined the average retail sales by beauty advisors in Kansas over a six month period was slightly under $72.00 per month. The supervisors and directors fared little better. He testified that over 96% of those who had acquired supervisor and director positions with Koscot showed no wholesale earnings during 1971. There was testimony from one of the company executives that the policy of Koscot was to limit the number of active directorships in Kansas to slightly over 316. However, Dr. Darling testified that in order to build the pyramid recruitment program explained in the "Golden Opportunity Meeting" training manual by which one could reap earnings of $26,000.00 the first year, over 72,000 directors would have to be recruited during that year. The entire scheme was based upon a false premise which merely disregarded consideration of market saturation levels.

Mr. Glenn W. Turner, who is prominently mentioned in the training manual as a "sharecropper on his way to harvest the world" and Koscot, his corporation, have previously received nationwide recognition in the reported court decisions of this nation. See *Koscot Interplanetary, Inc. v. King*, 452 S. W. 2d 531 (Texas Civ. App.); *Thaxton v. Commonwealth*, 211 Va. 38, 175 S. E. 2d 264; *People v. Koscot Interplanetary*, 37 Mich. App. 447, 195 N. W. 2d 43; *State ex rel. Turner v. Koscot Interplanetary, Inc.*, 191 N. W. 2d 624 (Iowa); *Morgan, Attorney General v. Dare To Be Great*, 15 N. C. App. 275, 189 S. E. 2d 802; *Frye v. Taylor*, 263 So. 2d 835 (Fla. App.); and *Kugler v. Koscot Interplanetary, Inc.*, 120 N. J. Super. 216, 293 A. 2d 682. As indicated in these reported cases many states have successfully prosecuted Koscot in actions similar to the present one based upon their own buyer protection acts.

In the present case the trial court entered the following findings:

"2. That the sale of Koscot cosmetics was an incidental part of the business conducted by the defendants; that the sale of cosmetics was used as a vehicle through which to conduct a spurious wholesale business with nothing much to wholesale except the sale of so-called 'positions' within the company.

"3. That the defendants have violated K. S. A. 1970 Supp. 50-603 by using and employing chain referral sales techniques and arrangements and agreements inducing the buyer to purchase merchandise of a cash sale price in excess of $50.00 upon the seller's promise and representation that if the buyer will furnish seller names of the *order* prospective buyers of like or

identical merchandise, that seller will contact the prospective buyers, and buyers will receive a reduction in the purchase price by means of a cash rebate, commission, and credit toward the balance due, which rebate, commission, and credit is contingent upon seller's ability to sell like or identical merchandise to the named prospective buyers.

"4. That defendants have violated K. S. A. 1970 Supp. 50-602 by using and employing deception, false pretense, misrepresentation, concealment, suppression and omission of material facts with the intent that others rely upon such concealment, suppression and omission in connection with the sale of the defendants' cosmetics and in connection with the sale of the so-called 'positions' within the defendants' organization.

"5. That persons holding the positions of director, distributor, supervisor, sub-distributor, retail manager, and beauty advisor, and any other so-called positions in defendants' organization are not independent contractors, but are agents and legal representatives of the defendants.

"6. That the wholesale and retail portion of the defendant's cosmetics business are inseparable.

"7. That the violations of K. S. A. 1970 Supp. 50-602 and K. S. A. 1970 Supp. 50-603 are substantial and wilful violations."

In considering the sufficiency of the evidence to support the court's findings that the merchandising practices of the defendants were unlawful under 50-602, *supra*, we note that the statute provides that the use of any deceptive, false or misleading business practice with intent that others rely upon the same in connection with the sale of any merchandise is unlawful without requiring the state to prove a particular person was deceived, misled or damaged thereby. It therefore follows that the testimony of beauty advisors, supervisors and directors of Koscot, to the effect that they were well pleased with the merchandise and the training received from Koscot, does not necessarily tend to establish that the company did not engage in deceptive, false or misleading business practices. From the testimony of Dr. Darling it is apparent that the hypothetical statistics on possible earnings which were graphically portrayed at the "Golden Opportunity Meetings" failed to acquaint the prospective recruits with the effects of market saturation. The glowing possibilities of future wealth from earnings, interrelated and dependent upon future recruitment possibilities, were deceptively presented to the recruits. On the basis of actual individual earning records obtained from the computer print outs of the company the defendants had to be aware of the deception and misrepresentation which gave fuel to the fire of their recruitment program.

The Iowa court in *State ex rel. Turner v. Koscot Interplanetary, Inc.*, supra, referred to the scheme as follows:

"Despite the thinly veiled cloak of respectability with which Koscot has attempted to clothe its pyramidal merchandise sales promotion scheme, the badge of fraud clearly shows through." (191 N. W. 2d, p. 631.)

The New Jersey court in *Kugler v. Koscot Interplanetary, Inc.,* supra, concluded that Koscot's practices violated their consumer fraud act saying:

"Koscot's distribution program is predicated upon a referral sales and pyramiding concept, a practice which is known as referral or pyramid sales. It is an arrangement whereby one is induced to buy upon the representation that he can not only regain his purchase price, but also earn profits by selling the same program to the public. It thus involves the purchase of the right to sell the same right to sell.

"A pyramid type practice is similar to a chain letter operation. Such a program is inherently deceptive for the seemingly endless chain must come to a halt inasmuch as growth cannot be perpetual and the market becomes saturated by the number of participants. See *e. g., State by Lefkowitz v. ITM Inc.,* 52 Misc. 2d 39, 275 N. Y. S. 2d 303 (*Sup. Ct.* 1966). Thus many participants are mathematically barred from ever recouping their original investments, let alone making profits. . . ." (120 N. J. Super. p. 232)

The Michigan court in *People v. Koscot Interplanetary,* supra, after examining the merchandising practices of Koscot summed up their conclusions in these words:

"After viewing Koscot's marketing plan in its most favorable light, we are constrained to conclude that defendant's scheme is a blatant attempt to extract money from investors through the use of misrepresented facts, exaggerated claims and statistics, undisclosed facts, and false advertising." (37 Mich. App. pp. 467, 468)

After examining the record in our present case we are similarly convinced that the interrelated merchandising and recruitment program carried on by Koscot Interplanetary, Inc. and Glenn W. Turner in Kansas falls within the unlawful merchandising practices proscribed by 50-602 and 50-603, *supra.* The program induces buyers (recruits) to buy merchandise upon the representation that additional commissions and credits will be received by them on furnishing prospective buyers or recruits to the seller contingent upon seller's ability to sell like merchandise and recruitment to these prospects. Thus in the present case the method of merchandising violated both sections of our Buyer Protection Act, the fraud or misrepresentation section and the provision against chain referral or pyramid sales schemes.

The scheme, like the chain letter syndrome, as a matter of economic and mathematical certainty, is doomed to eventual failure and no matter the juncture at which this point of failure is reached,

the number of latest recruits will grossly exceed the sum of all prior recruits. It thus is apparent that by far the greater number of recruits can earn no commissions because of market saturation. While the end futility of the recruitment scheme is obvious to the promoters, it is not apparent to the consumer participant. This, then, is the vice and deception concealed from the prospective recruit in the present pyramid or chain referral promotion scheme. The evidence in the record is ample to support the findings of the trial court. The appellants engaged in both unlawful practices, and their continued activities over a period of several years amounted to a substantial and willful violation of K. S. A. 1972 Supp. 50-602 and 50-603 justifying the sanctions imposed.

The Kansas Buyer Protection Act was first passed in 1968. It has twice been considered by this court. In *State v. McPherson*, 208 Kan. 511, 493 P. 2d 228, procedural matters under the Act were raised and considered. In *Hunter v. Haun*, 210 Kan. 11, 499 P. 2d 1087, the word "Merchandise" as used in the Act was construed. In those two prior cases the constitutionality of the Act was not challenged. This question is now presented for the first time from several rather varied angles.

It is first contended that the Act violates the appellants' rights against self-incrimination in that 50-604, *supra*, requires any person complained against to file a statement under oath as to all facts concerning the alleged unlawful practice which the attorney general may deem necessary. Section 10 of the Bill of Rights of the Constitution of the State of Kansas provides:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of the witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. *No person shall be a witness against himself,* or be twice put in jeopardy for the same offense." (Emphasis added.)

In *State v. Faidley*, 202 Kan. 517, 450 P. 2d 20, it was pointed out that the provisions of the Fifth Amendment to the United States Constitution grant no greater protection against self-incrimination than does Section 10 of our Bill of Rights and as far as possible both should have the same interpretation.

K. S. A. 1972 Supp. 50-604 provides:

"Upon receipt by the attorney general of a verified written complaint signed by the complainant setting forth facts showing that a person has engaged in, or is engaging in, any practice declared to be unlawful by this article and when

the attorney general believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in, or is about to engage in, any such practice, he may:

"(1) Require such person to file on such forms as he prescribes a statement or report in writing, under oath, as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person, and such other data and information as he may deem necessary.

"(2) Examine under oath any person in connection with the sale or advertisement of any merchandise.

"(3) Examine any merchandise or sample thereof, or any record, book, document, account or paper as he may deem necessary.

"(4) Pursuant to an order of the district court, impound any record, book, document, account, paper or sample or merchandise material to such practice and retain the same in his possession until the completion of all proceedings undertaken under this act or in the courts."

Any proceedings by the attorney general or a district attorney under 50-604, *supra*, cannot be held violative of the constitutional privilege against self-incrimination. The proceedings are inquisitorial in nature and are generally understood as a legislative device to permit the state's law enforcement officer to gather information of a preliminary nature which is necessary for effective enforcement of laws to protect the public. In *State, ex rel., v. American Oil Co.*, 202 Kan. 185, 446 P. 2d 754, inquisition procedures under the antitrust law statutes of this state were attacked as being in violation of the constitutional right to counsel. The court held that at an inquisition held under the antitrust law, where an employee is questioned about possible antitrust law violations by his corporate employer, the corporation has no constitutional right to be represented by counsel. The same reasoning applies in the present case.

In addition the privilege against self-incrimination is a personal one which can be raised by individuals alone and does not extend to corporations. See *United States v. Kordel*, 397 U. S. 1, 25 L. Ed. 2d 1, 90 S. Ct. 763, and cases cited in footnote 9 at p. 7. Assuming *arguendo* that the proceedings are brought to impose criminal or penal sanctions and are of such a nature that the privilege may be claimed, Koscot and Midway as corporations hold no such privilege, and Glenn W. Turner at no time appeared or took part in the proceedings below. The sanction applied in any case where the constitutional privilege against self-incrimination has been violated is suppression of the compelled disclosure. Glenn W. Turner disclosed nothing.

The constitutional privilege against self-incrimination is of a personal nature and its violation may be asserted only by one entitled to claim the privilege. A corporation has no standing to raise the question of denial of the constitutional privilege against self-incrimination of its employees testifying at an inquisition held pursuant to K. S. A. 1972 Supp. 50-604.

Appellants next claim the Act is unconstitutionally vague and indefinite because it fails to define the practices described as amounting to "deception, fraud, false pretense, false promise, misrepresentation". These terms all have established meanings in the law. The test of proper clarity is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice.

In *Callaway v. City of Overland Park*, 211 Kan. 646, 508 P. 2d 902, the rule is stated in these words:

"A statute imposing criminal sanctions which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process, but if the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice, it is not void for vagueness. [Citations omitted]" (p. 655)

The appellants argue that the provisions in the statute relating to fraud which eliminate the necessity of establishing the usual elements of reliance and damages render the proscribed conduct vague and indefinite. The elimination of the necessity for proof of these elements does not alter the character of the sellers' conduct. The proscribed conduct of deception and fraud is precisely the same with or without proof of reliance by or damages to a particular third person. Every reasonable presumption must be indulged in support of a controverted act and any doubts should be resolved in favor of its validity. Even if we subject the statute to rules of strict construction generally applied to statutes defining statutory crimes the statutes do not appear void for vagueness. (See *State v. Hill*, 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750; *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705.) We hold the provisions of the Buyer Protection Act, K. S. A. 1972 Supp. 50-602 and 603, are not constitutionally impermissible for vagueness.

The Act is subjected to an additional attack on the grounds it violates appellants' rights to carry on their business and to contract.

The right and duty of the state to protect its citizens from injurious business activities by regulation under the police power

can hardly be questioned. (*State, ex rel., v. Cooper*, 147 Kan. 710, 716, 78 P. 2d 884; *State v. Lindsay*, 85 Kan. 79, 116 Pac. 207; *Meffert v. Medical Board*, 66 Kan. 710, Syl. ¶ 3, 718, 72 Pac. 247.) Both state and federal cases hold that even a legitimate occupation may be restricted or prohibited in the public interest and persons may be restrained from certain contracts adversely affecting that interest. (*Breard v. Alexandria*, 341 U. S. 622, 632, 95 L. Ed. 1233, 71 S. Ct. 920; *Frisbie v. United States*, 157 U. S. 160, 165, 39 L. Ed. 657, 15 S. Ct. 586.)

In *Ferguson v. Skrupa*, 372 U. S. 726, 10 L. Ed. 2d 93, 83 S. Ct. 1028, involving a Kansas statute prohibiting debt adjusting except as an incident to the lawful practice of law (K. S. A. 21-2464 now K. S. A. 1972 Supp. 21-4402), the United States Supreme Court upheld the statute saying:

". . . It is now settled that States 'have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law.' " (372 U. S. p. 730)

The state has the power to regulate a legitimate business which is detrimental to the people if not properly conducted, or to prohibit a business activity found to be essentially injurious to public welfare and such regulation or prohibition may be reasonably imposed against sales practices and promotional schemes deemed by the legislature to be injuriously fraudulent. The Kansas Buyer Protection Act prohibiting deceptive sales and advertising practices and the use of chain referral or pyramid merchandise sales schemes is not constitutionally impermissible on the theory it infringes upon constitutionally protected liberty of contract or right to do business. An identical statute in Iowa was upheld under similar constitutional challenges. See *State ex rel. Turner v. Koscot Interplanetary, Inc.*, supra.

Appellants next contend that Glenn W. Turner as chairman of the board of directors of Koscot, a corporation, cannot be held personally liable in this action. It is argued that corporate officers and directors are not personally liable for torts committed by their agents and employees. The rule is hardly applicable here for the present action is a statutory one for injunctive and other relief. In any event the directors and officers of a corporation may be held liable for their fraudulent acts to persons dealing with the corporation and suffering damage as a result of their own false representations as to material

matters. (*Gray v. Ray Gill, Frontier Industries, Inc.*, 208 Kan. 95, 99, 490 P. 2d 615; 19 C. J. S. Corporations, § 850, p. 281; see also *Hanson v. Murphy*, 208 Kan. 297, 491 P. 2d 551 and Anno. 32 A. L. R. 2d 231, § 26.)

From the undisputed evidence in this case Glenn W. Turner organized Koscot and has control of the corporation as chairman of the board of directors. He personally devised and initiated the merchandising philosophy contained in the manual on which the company operates. Much of the training manual distributed for use at the "Golden Opportunity Meetings" is devoted to his own personal achievements and merchandising philosophy. The corporate veil in this case is too thin to effectively shield him from the consequences of initiating the unlawful merchandising practices in Kansas. Other states have come to similar conclusions. (See *Kugler v. Koscot Interplanetary, Inc.*, supra.)

The other minor points on appeal, including procedural questions raised by the appellants, have been examined and no prejudicial error resulted since it appears upon the whole record that substantial justice has been done by the judgment of the trial court. (K. S. A. 60-2105) Accordingly the cross-appeal is dismissed and the judgment of the trial court is affirmed.