No. 50,185

GOVERNMENTAL ETHICS COMMISSION, *Appellee,* v. ROBERT J. CAHILL, *Appellant,* and MARGARET G. STOLL, *Intervenor.*

(594 P.2d 1103)

Opinion filed May 5, 1979.

*John Anderson, Jr.,* of Anderson, Granger, Nagels & Lastelic, Chartered, of Overland Park, argued the cause and was on the brief for the appellant.

*Dennis D. Prater,* assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for the appellant.

*John H. Fields,* of Carson, Fields & Boal, of Kansas City, argued the cause for the intervenor.

The opinion of the court was delivered by

FROMME, J.: Robert J. Cahill appeals from an order finding him in direct contempt for refusing to answer certain questions during the taking of a discovery deposition. The contempt occurred before a judge of the district court in Shawnee County, Kansas. Cahill refused to answer questions posed by counsel after having been directed by the judge to answer. He was found to be in direct contempt and ordered committed to the Shawnee County jail until such time as he purged himself by answering the questions. Bond was set and posted. This appeal followed.

Certain background information is necessary to understand the points raised on appeal. A complaint was filed with the Governmental Ethics Commission against Margaret G. Stoll. This commission was created by K.S.A. 1978 Supp. 25-4119a with the duty and the authority to enforce compliance with the provisions of the Campaign Finance Act.

K.S.A. 1978 Supp. 25-4110 requires every person who makes a contribution or expenditure other than directly to a candidate or a candidate committee, party committee, or political committee, in an aggregate amount of $100.00 or more within a calendar year to file a report of such expenditure with the secretary of state. A complaint was made to the commission that Margaret G. Stoll made various undisclosed property contributions exceeding in value the amount limited by statute in an effort to promote the candidacy of J. R. Russell in his bid to unseat Nick Tomasic as district attorney. This was alleged to have occurred in the 1976 campaign. One such item claimed was evidenced by a C.O.D. delivery ticket for printing 22,500 envelopes over Mrs. Stoll's signature, costing $173.16 and receipted for by Robert J. Cahill. Mrs. Stoll is the mother-in-law of Mr. Cahill.

The commission, after making the probable cause determination against Mrs. Stoll as required in K.S.A. 1978 Supp. 25-4122, served Mr. Cahill with a subpoena to appear for the purpose of giving his deposition.

K.S.A. 1978 Supp. 25-4124 in pertinent part provides:

"Depositions may be taken and used in the same manner as in civil actions. Any person subpoenaed to appear and give testimony or to produce books, papers or documents, who fails or refuses to appear or to produce such books, papers or documents, or any person, having been sworn to testify, who refuses to answer any proper question, may be cited for contempt of the district court of Shawnee county, Kansas. The commission shall report to such court the facts relating to any

such contempt. Thereupon proceedings before such court shall be had as in cases of other civil contempt."

Appellant Cahill appeared at the deposition hearing but invoked his right to remain silent on the grounds his testimony might incriminate him. This right was claimed under the Fifth Amendment. Thereupon Mr. Cahill was handed a grant of immunity in writing, signed by the attorney general. The grant is verified before a notary public and reads:

"NOTICE AND GRANT OF IMMUNITY FROM PROSECUTION

"I, Curt T. Schneider, duly elected, qualified and acting Attorney General of the State of Kansas, on this *21st* day of October, 1977, do hereby authorize and do grant immunity from prosecution or punishment to Robert J. Cahill on account of any transaction or matter contained in any statement or about which such person shall be compelled to testify relating to or in connection with the campaign for the Democratic nomination for the office of District Attorney for the 29th Judicial District, held in 1976, and such statement on testimony shall not be used against such person in any prosecution for a crime under the laws of Kansas or any municipal ordinance."

Because of certain objections to questions and refusal of Mr. Cahill to answer, the deposition was being taken in the presence of a district judge in Shawnee County. Mr. Cahill was handed one of the letters signed by Mrs. Stoll and was asked: "How much did it cost you for this particular document," and "Are you acquainted with J. R. Russell." Mr. Cahill refused to answer either question on the advice of counsel. The C.O.D. delivery ticket for printing 22,500 letters was produced and handed to Mr. Cahill. He was asked about payment of the printing cost. Counsel for Cahill again objected to Mr. Cahill answering further questions concerning the three documents identified as Exhibits 1, 2, and 3. These included two letters printed over the signature of Mrs. Stoll plus the C.O.D. delivery ticket. Counsel for the commission requested permission to inquire further concerning possible agreements between Cahill and Russell, concerning the use to which the letters were to be put, concerning where the money was to come from to finance the production and distribution of the letters, and concerning where the mailing information came from. Further response was refused by Mr. Cahill.

An order holding Mr. Cahill in direct contempt of court was entered and this appeal followed.

Appellant first contends that the written grant of immunity tendered him was not coextensive with the scope of the constitu-

tional privilege against self-incrimination and he therefore cannot be compelled to testify.

The Fifth Amendment privilege against compulsory self-incrimination reads as follows:

"No person . . . shall be compelled in any Criminal Case to be a witness against himself . . . ."

Section 10 of the Kansas Bill of Rights provides in part:

"No person shall be a witness against himself . . . ."

The privilege also finds expression in the Kansas statutes in K.S.A. 60-425, which provides:

"Subject to K.S.A. 60-423 and 60-437, every natural person has a privilege, which he or she may claim, to refuse to disclose in an action or to a public official of this state or the United States or any other state or any governmental agency or division thereof any matter that will incriminate such person."

The Fifth Amendment is, of course, applicable to the states through the Fourteenth Amendment. See *Malloy v. Hogan,* 378 U.S. 1, 12 L.Ed.2d 653, 84 S.Ct. 1489 (1964); *State v. Montanez,* 215 Kan. 67, 69, 523 P.2d 410 (1974). This court has, however, consistently held that the same protections are provided by Section 10 of the Kansas Bill of Rights as by the Fifth Amendment to the United States Constitution. See *In re Birdsong,* 216 Kan. 297, 299, 532 P.2d 1301 (1975); *State, ex rel., v. Koscot Interplanetary, Inc.,* 212 Kan. 668, 676, 512 P.2d 416 (1973); *State v. Faidley,* 202 Kan. 517, 520, 450 P.2d 20 (1969). These protections provide that no person shall be compelled in any criminal case to be a witness against himself.

It is now established that governments may compel testimony which would otherwise be privileged by providing a grant of immunity, but only where the grant of immunity is coextensive with the scope of the constitutional privilege against self-incrimination. See *In re Birdsong,* 216 Kan. at 299-300. The trial court held that the grant of immunity given appellant under K.S.A. 22-3415 in this case was sufficient. K.S.A. 22-3415 reads as follows:

"The county or district attorney or the attorney general may at any time, on behalf of the state, grant in writing to any person immunity from prosecution or punishment on account of any transaction or matter contained in any statement or about which such person shall be compelled to testify and such statement or testimony shall not be used against such person in any prosecution for a crime under the laws of Kansas or any municipal ordinance. After being granted

immunity from prosecution or punishment, as herein provided, no person shall be excused from testifying on the ground that his testimony may incriminate him unless such testimony is a violation of federal law. He shall not be granted immunity from prosecution for perjury or false statement or any other crime committed in giving such evidence."

In *In re Birdsong,* this court holds that the immunity provided under K.S.A. 22-3415 is coextensive with the constitutional privilege and a witness granted immunity under the statute is not justified in refusing to answer questions on the basis of the constitutional privilege. Appellant does not really question this; appellant's contention is that the attorney general exceeded his power in granting immunity before the Governmental Ethics Commission. It is appellant's position that K.S.A. 22-3415 grants authority to the named officers to grant immunity only in criminal cases conducted by them. Appellant therefore contends that the grant of immunity in the present case is not coextensive with his constitutional privilege in that it was given without statutory authority.

A prosecutor has no inherent power to grant immunity to a witness; statutory authority is required for such a grant. See *United States v. Ford,* 99 U.S. 594, 25 L.Ed. 399 (1878); *Com. v. Strickler,* 481 Pa. 579, 584, 393 A.2d 313 (1978); *In re Daley,* 549 F.2d 469, 480 (7th Cir.), *cert. denied* 434 U.S. 829 (1977); *United States v. Gorham,* 523 F.2d 1088, 1096 (D.C. Cir. 1975); Annot., 13 A.L.R.2d 1439 (1950). A witness cannot be convicted of contempt for refusing to testify on the grounds of self-incrimination where the immunity offered him is invalid as being beyond the statutory power of the prosecution. See 17 Am. Jur. 2d, Contempt § 32, p. 37. The question in this case then is one of statutory construction; does K.S.A. 22-3415 confer power on the attorney general and district and county attorneys to grant immunity for testimony before an administrative agency? This is a question of first impression.

The immunity provision in K.S.A. 22-3415 was not adopted until 1972. The statute on its face appears to confer broad authority on the attorney general and district and county attorneys in determining when immunity shall be given. This is a very potent authority in that K.S.A. 22-3415 confers transactional as well as use immunity and therefore the grant of immunity will bar prosecution on any matter contained in a statement or testimony given under the grant. *In re Birdsong,* 216 Kan. 297, Syl.

¶ 5. Appellant offers several theories to support his position that the statute does not authorize the grant of immunity attempted in this case. First appellant notes that the statute is contained in the criminal code. From this appellant argues that the statute only applies in criminal investigations and not administrative proceedings. Appellant also notes that the legislature has adopted other immunity statutes such as K.S.A. 1978 Supp. 22-3008 relating to grand juries and K.S.A. 22-3102 relating to inquisitions. The appellant asserts this demonstrates a legislative intent that K.S.A. 22-3415 not be all encompassing.

We reject this argument. Grand juries and inquisitions involve specialized proceedings. It is therefore not surprising that the legislature would include special immunity statutes relating to them and by so doing the legislature has expressed no intention that K.S.A. 22-3415 be given a limited reading. Appellant also calls this court's attention to certain statutes containing immunity provisions which are limited to specific administrative agencies and officers. Appellant argues that by enacting immunity statutes relating to certain administrative agencies the legislature manifested the intention that K.S.A. 22-3415 should not apply to any agencies. This contention must also fail. As appellant admits, these specialized administrative immunity statutes grant automatic immunity from prosecution for witnesses who appear and testify. Thus in no way do these special provisions indicate a limitation on the provisions of K.S.A. 22-3415 which relate to permissive grants of immunity.

The powers conferred by K.S.A. 22-3415 on the attorney general and the district and county attorneys of this state are very broad. This statute confers power to grant immunity for testimony before an administrative agency such as the Governmental Ethics Commission.

In his second point of error appellant contends that the questions he refused to answer were irrelevant and that it violated his First Amendment rights to require him to answer them. Both objections are without merit.

The appellant is the son-in-law of Margaret Stoll, who is the respondent before the commission. They both reside at the same address. Stoll signed certain letters which were sent to voters urging them to vote against Nick Tomasic. An order was placed for a volume of envelopes in the name of J. R. Russell, who was

Tomasic's opponent. The envelopes were picked up and paid for by Cahill. Cahill admitted that he had the letters made up. No campaign finance report was ever filed in relation to these letters. Under these facts it became a question of who violated the statute on reporting.

The general rule expressed in K.S.A. 60-226(*b*) is that any matter not privileged is discoverable if it is relevant. It is not a ground for objection that the information sought will be inadmissible at trial if it appears reasonably calculated to discover admissible evidence. Relevant evidence is defined in K.S.A. 60-401(*b*) as "evidence having any tendency in reason to prove any material fact." It is recognized that the scope of relevancy in deposition proceedings is even broader than the scope of relevancy at trial. See *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 326, 578 P.2d 1138, *rev. denied* 224 Kan. clxxxvii (1978). It seems apparent that the legislature by providing in K.S.A. 1978 Supp. 25-4124 that depositions could be taken in proceedings under the Campaign Finance Act "in the same manner as in civil actions" intended the same broad scope of discovery. The questions asked appellant in this case clearly were relevant.

Appellant also contends that his First Amendment right of association is violated by requiring him to answer the questions in this case. Appellant attempts to support this argument by citing United States Supreme Court cases which hold that compelled disclosure of associational information can seriously infringe on privacy of association and belief as guaranteed by the First Amendment. See *Buckley v. Valeo,* 424 U.S. 1, 64, 46 L.Ed.2d 659, 96 S.Ct. 612 (1976). Under this rule the states may be precluded from compelling disclosure of information concerning associational activities because such disclosure will have a "chilling effect" on First Amendment freedoms. See generally *Gibson v. Florida Legislative Comm.,* 372 U.S. 539, 9 L.Ed.2d 929, 83 S.Ct. 889 (1963); *N.A.A.C.P. v. Button,* 371 U.S. 415, 9 L.Ed.2d 405, 83 S.Ct. 328 (1963); *Bates v. Little Rock,* 361 U.S. 516, 4 L.Ed.2d 480, 80 S.Ct. 412 (1960).

Thus, a state may not require teachers, as a condition of their employment, to file annually an affidavit listing every organization to which they have belonged or regularly contributed during the prior five years. *Shelton v. Tucker,* 364 U.S. 479, 5 L.Ed.2d

231, 81 S.Ct. 247 (1960). In another case the court has held that a state may not punish the N.A.A.C.P. for contempt for refusing to disclose the names of all its members where it is shown such disclosure could result in reprisals against the members. Once again the court is concerned with the chilling effect such forced disclosure will have on associational freedoms. *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 2 L.Ed.2d 1488, 78 S.Ct. 1163 (1958).

It would appear to be appellant's position that the First Amendment, as construed in the cases outlined above, prohibits the state from compelling testimony from him which relates to his political activities. He asserts in this case that the commission cannot require him to disclose the amount of his expenditure in reproducing the letter which Margaret Stoll signed calling for Nick Tomasic's defeat. The Supreme Court, however, has never held that the First Amendment precludes the states from compelling relevant testimony from a witness merely because that testimony will relate in some degree to that witness' political activities. Appellant has made no showing whatsoever that disclosure of this information interferes with his First Amendment freedoms. The point is spurious. No First Amendment rights of appellant are violated by compelling him to answer the questions asked of him in this case.

In his third point of error appellant alleges the trial court lacked jurisdiction to cite him for contempt. The reason for this, as will be more fully developed, is that the deposition was taken more than fifty miles from his residence. The point lacks merit.

The first thing to be noted is that K.S.A. 1978 Supp. 25-4124 expressly grants the Shawnee County District Court jurisdiction to issue contempt citations arising out of commission proceedings. The appellant argues this statute does not cover contempts arising out of depositions but only contempts arising out of hearings before the commission. K.S.A. 1978 Supp. 25-4124 does control contempts arising out of depositions and therefore the trial court had jurisdiction in this case.

Appellant's next contention is as follows: First K.S.A. 1978 Supp. 25-4124 provides that "[d]epositions may be taken and used in the same manner as in civil actions." The administrative rule of the Governmental Ethics Commission relating to depositions in commission proceedings is Rule 19-7-6 (1978). The rule provides that the procedures outlined in K.S.A. 60-226 shall be

used. However, K.S.A. 60-226 does not deal with procedures for conducting depositions. It contains general provisions governing discovery. Appellant contends, and correctly so, that the inclusion of K.S.A. 60-226 was a draftsmanship error and the rule really contemplates adopting the procedures under K.S.A. 60-230.

Assuming this to be correct K.S.A. 60-230(*a*) provides that attendance of a witness may be compelled by subpoena as provided in K.S.A. 60-245. That statute, as appellant notes, deals with subpoenas covering not only depositions but also hearings and trials.

K.S.A. 60-245(*d*)(2), relating to subpoenas for taking depositions, provides in part:

"A resident of this state shall not be required to attend an examination at a place which is not within fifty (50) miles of either the place of his residence, or of the place of his employment, or of the place of his principal business."

It appears to be conceded by all parties that the deposition was taken at a place more than fifty miles from appellant's place of residence, employment, or principal business. However, K.S.A. 60-245(*d*)(2) does not say that a deposition may not be taken outside such area. It merely provides that a resident "shall not be required to attend an examination" outside this area. In this case appellant and his counsel were present when Judge Barbara set the deposition for the Shawnee County Courthouse, and they made no objection. One reason for setting the deposition in the courthouse appears to have been so Judge Barbara would be available to settle disputes. Appellant did object to the location on the day of the deposition. There was also some talk about the fifty mile limitation prior to setting the deposition; however, this had to do with an unrelated contention by appellant. Appellant waived any objection to the fifty mile limitation on the place of taking a deposition when he appeared at the appointed time. and place.

Judgment affirmed.