W. Newton Male Bank Commissioner Office of the State Bank Commissioner 700 Jackson, Suite 300 Topeka, Kansas 66603-3714
Dear Commissioner Male:
As Bank Commissioner you request our opinion on whether businesses which offer bi-weekly mortgage payment plans violate K.S.A. 21-4402, which prohibits debt adjusting. Specifically, you ask whether the fact that these mortgage payment plans direct payments to only one creditor places these plans outside the scope of K.S.A. 21-4402; whether the type of fee charged or the individual's failure to pay the fee places these mortgage payment plans outside the scope of K.S.A. 21-4402; or whether other factual or legislative considerations place these mortgage payment plans outside the scope of K.S.A. 21-4402.
This office previously examined the debt adjusting statute in Attorney General Opinion No. 93-116. The definition of debt adjusting contained in K.S.A. 21-4402(a) states:
 "Debt adjusting is engaging in the business of making contracts, express or implied, with a debtor whereby the debtor agrees to pay a certain amount of money periodically to the person engaging in the debt adjusting business who shall for a consideration distribute the same among certain specified creditors."
Debt adjusting is a class B nonperson misdemeanor. K.S.A. 21-4402(c).
Attorney General Opinion No. 93-116 noted that the United States Supreme Court analyzed the constitutionality of K.S.A. 21-2463 [repealed in 1969], in Ferguson v. Scrupa.[1] The language of this original debt adjusting statute was substantially the same as K.S.A. 21-4402. The Court in Scrupa refused to examine the social utility of debt adjusting under the federal Due Process Clause, concluding that the Court would not sit as a "superlegislature" and reweigh the "wisdom of [the] legislature" in its regulation of business and industrial conditions.[2] Any argument that the law is wise or unwise, further stated the Court, "lies not with us but with the body constituted to pass laws for the state of Kansas."[3] The Kansas Supreme Court has subsequently used the United States Supreme Court's reasoning to uphold other Kansas laws regulating legitimate business and commercial activities which the Kansas Legislature has decided to restrict or prohibit.[4]
It was determined in Attorney General Opinion No. 93-116 that a non-profit company's use of the consideration paid by a debtor does not exempt it from K.S.A. 21-4402, explaining that "any fee paid by a debtor to an organization . . . in exchange for that organization distributing money periodically paid by the debtor among specified creditors" is consideration and within the statute's definition. The organization's status as non-profit, likewise, did not exempt it from the statute's prohibitions.[5] Using the Scrupa rationale the opinion concluded we could not read exemptions into the statute where none were spelled out by the Legislature, however desirable these exemptions may seem.
You describe the bi-weekly mortgage payment plan as one in which the individual (borrower) makes his residential mortgage payments to a company, which then makes two, rather than one, monthly mortgage payments to the mortgage holder (lender). The company sets up an automatic, electronic transfer from the borrower's bank account to fund the bi-weekly payments. The borrower realizes a long-term interest savings from this payment plan; the bi-weekly payments result in an extra payment being made each year which shortens the life of the loan. Various companies charge either an up-front administrative fee for the biweekly payment service or charge only the fee for the electronic debit transaction. It is our understanding that companies which offer the bi-weekly mortgage service collect interest on the borrower's mortgage payment before it is fully paid to the lender. One of the applications you submitted to us required the first mortgage payment to be made four Fridays before the actual mortgage due date and stated that no interest would be paid or credited to the lender from his monthly payment.
Your first question is whether K.S.A. 21-4402 applies to bi-weekly mortgage payment companies when mortgage payments are paid to only one creditor, the lender, rather than to the statute's "certain specified creditors." The rule of statutory construction on the use of plurals is stated in K.S.A. 77-201 Third: "words importing the plural number only may be applied to one person or thing," unless this construction would be "inconsistent with the manifest intent of the legislature or repugnant to the context of the statute." K.S.A. 77-201. K.S.A. 21-4402 contains no "manifest intent" in its language, nor in its legislative history, which would mandate that distributions be made to creditors before the statute is triggered. Other states, like Kansas, have prohibited or regulated debt adjusting "in an attempt to minimize fraud and protect the public from unscrupulous operators"[6] or, as an Ohio court found when it analyzed a statute similar to Kansas', debt adjusting "can and has developed objectionable and harmful aspects" including companies collecting the charges from the debtor and then failing to distribute the money.[7] Without any directive otherwise in the Kansas statutory language or history, interpreting creditors as both singular and plural is consistent with the apparent purpose of the statute to protect the public from potential debt collection fraud and abuse.
Your next question is whether the types of fees charged (i.e. electronic debit fees) constitute "consideration" sufficient to trigger the statute's penalties, and if the borrower fails to pay the fee would a contract then not exist due to lack of consideration? In Attorney General Opinion No. 93-116 "consideration" was described as the inducement to a contract. Long-standing Kansas case law likewise holds that consideration need not be something of pecuniary value and its legal sufficiency is not dependant on the comparative economic values of the contracting parties' benefits; rather "any legal consideration for a promise is sufficient."[8] "Any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract, or any loss or detriment to the promisee is sufficient consideration to support the promise (citations omitted)."[9]
From the information and application forms you submitted, it is apparent that both the borrower and the company benefit from the bi-weekly mortgage agreement. The borrower, through the regimen of an extra payment each year, realizes an interest savings and a shorter repayment period. The company benefits from the up-front administrative fee and/or interest from the use of the borrower's funds until mortgage payments are due; conversely, the borrower loses the use and benefit of his funds in the short term, which is a legal detriment. K.S.A. 21-4402 states a contract for debt adjustment services may be either express or implied,
so, regardless of the fee's payment, the agreement by the borrower to transfer his funds periodically to the company, and the company's agreement to distribute the funds to the lender in exchange for the temporary use of and interest on borrower's money constitutes legal consideration. Moreover, consistent with Attorney General Opinion No.93-116, the promise of each party to either pay or collect and distribute constitutes an inducement to contract and therefore consideration.
Your last question is whether factual or legislative considerations exempt these bi-weekly mortgage payment plans from K.S.A. 21-4402. As stated above, we found no legislative history interpreting this statute. The fundamental rule of statutory construction, however, is that the purpose and intent of the Legislature governs where the intent can be ascertained from the statute.[10] "Where a statute is plain and unambiguous, the court must give effect to the intent of the legislature as expressed rather than determine what the law should or should not be."[11] Unlike other states' debt adjusting laws, the Kansas Legislature has not chosen to: exempt companies which adjust an individual's debts at no cost to the borrower,[12] place a monetary cap on the amount a debt adjusting company can charge;[13] penalize only the unlicensed practice of debt adjusting[14] or expressly regulate "accelerated mortgage payment providers" and require a bond, notice to the mortgage holder and segregated trust accounts.[15] The Kansas statute exempts only debt adjusting incident to the practice of law.[16]
Under the foregoing rules construing statutes, no exclusions or modifications which would exempt bi-weekly mortgage payment plans can be read into K.S.A. 21-4402. The plans meet the plain language and the elements of debt adjusting; that is, (1) the company is engaged in the business of making express or implied contracts with the debtor whereby said debtor agrees to pay the company a certain amount of money periodically; and (2) the company agrees for a consideration to distribute such money among his creditors.[17]
It is our opinion that bi-weekly mortgage payment plans fall within the plain definition of "debt adjusting," and are therefore a violation of K.S.A. 21-4402.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:NLU:jm
[1] 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
[2] Ferguson v. Scrupa, 372 U.S. at 731.
[3] Id.
[4] Blue v. McBride, 252 Kan. 894 (1993); State of Kansas, ex rel.Sanborn v. Koscot Interplanetary, Inc., 212 Kan. 668, 679 (1973).
[5] Attorney General Opinion No. 93-116.
[6] 95 A.L.R. 2d (1964) 1356 § 2.
[7] State v. Brown, 205 N.E. 377 (Ohio St. 1965).
[8] Long v. Buehler, 8 Kan. App. 2d 23, 28 (1982).
[9] Id. at 29.
[10] Davey v. Hedden, 260 Kan. 413, 419 (1996).
[11] Id.
[12] Mo. Ann. Stat. § 425.040 (West 1992).
[13] W. Va. Code § 61-10-23 (1997).
[14] N.J. Stat. Ann. § 17:16/g-1 — 8 (West 1984); Wis. Stat. Ann. §218.02 (West 1994).
[15] Minn. Stat. Ann. § 332.31 (West 1995).
[16] K.S.A. 21-4402(b).
[17] PIK Crim. 3d § 66.02