Dorothy **GILLMAN**, as Administratrix of the goods, chattels and credits of Raymond Walter Gillman, Deceased, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 68 Civ. 5149.**

United States District Court,
S. D. New York.

Sept. 22, 1971.

 

Leon Vogel, New York City, for plaintiff.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for defendant by Richard S. Toder, Asst. U. S. Atty., New York City.

GURFEIN, District Judge.

This action was brought under the Federal Torts Claim Act (28 U.S.C. 2671–80; 1346(b)) by the decedent's widow as Administratrix. The deceased, Raymond Walter Gillman, was a mental patient in the Northport Hospital maintained by the Government. On May 10, 1967 Gillman committed suicide by immolating himself, after dousing himself with turpentine, in the courtyard of the Hospital. The plaintiff charges that the United States failed to care for the decedent properly since he was known to have suicidal tendencies and that his death resulted from the defendant's negligence.

The plaintiff moves for discovery under Rules 34 and 37 of the Federal Rules of Civil Procedure, seeking to compel the defendant to produce certain designated documents. The Government has already produced over 650 pages of documents comprising the decedent's medical records. The Government has also voluntarily produced: (1) a report of the incident by the occupational therapist and the Chief of the Medical Service; (2) a similar report by the Physical Medicine and Rehabilitation Coordinator; (3) a summary by the physician who was Acting Chief of Staff; and (4) two field examinations by Veterans Administration attorneys (preceding the death of the decedent).

The Government opposes the production of other documents. These are: (1) report of a Board of Inquiry of Northport V.A.; (2) report of the Director of the Hospital after receiving the aforesaid report; (3) statements obtained by the Board of Inquiry from May 10–May 15, 1967 at the Northport

Hospital from various named personnel of the Hospital.

The Government contends that these documents are privileged and, therefore, exempt from production under Rule 26(b) (1). It is stated that the Board of Inquiry was set up by the Director of the Northport Hospital after the suicide of the decedent to determine whether any disciplinary action should be taken against any of the Hospital personnel because of the incident and whether steps should be taken to change hospital procedures to prevent a recurrence.

The report of the Board of Inquiry made findings as to discipline and future procedures. The report of the Director reviewed the conclusions and recommendations and contains his decision. The statements of Hospital personnel, which were used by the Board of Inquiry, involved both testimony as to the facts—how the incident occurred—and opinion testimony relating to improvement of hospital procedures.

The Government argues that the purposes of a Board of Inquiry into a hospital incident would be thwarted if the proceedings were not accorded the status of confidentiality. Neither the witnesses nor the Board could speak freely if it were believed that the statements could be discovered for use in a lawsuit by a prospective plaintiff. Constructive criticism would be suppressed for fear of the consequences. Indeed, the Government suggests that directors of hospitals might find it more expedient, in such event, to have no official inquiry at all to the detriment of the safety of the hospital.

The plaintiff, on the other hand, points out that the decedent died almost immediately after the incident and that all the evidence is in the possession of the defendant. She notes, quite properly, that memories fade as time goes on.

She suggests that statements taken shortly after the event are more likely to be accurate and that the truth should be made available to the decedent's widow, regardless of other consequences.

We are faced with the not uncommon dilemma of both sides being right. The issue has been presented for Federal judicial decision only once before, so far as research by counsel has disclosed. In Bredice v. Doctors Hospital, Inc., 50 F. R.D. 249 (D.C.Dist.Col.1970) Judge Corcoran held that a hospital was entitled to a "qualified privilege" with respect to its staff minutes and reports concerning the patient's death. Although a "good cause" showing was still required before the 1970 amendments which took effect July 1, 1970, the decision did not turn on that. See Bredice v. Doctors Hospital, Inc., 51 F.R.D. 187 (Judge Green, 1970). As a lucid argument for the privilege we quote Judge Corcoran's opinion:

"Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit."

██ We agree with Judge Corcoran and hold that the reports of the Board of Inquiry and of the Director should not be made available to the plaintiff.[1]

---

1. Plaintiff's argument that the Board of Inquiry reports are discoverable as expert testimony under Rule 26(b) (4) is rejected. There is no showing that any of its members will be called as expert witnesses at the trial nor were they specially retained in anticipation of litigation.

In his ruling Judge Corcoran, however, merely refused to allow discovery of "minutes and reports." It is not clear whether any formal "statements" of hospital personnel had actually been taken by the Board of Inquiry of the Hospital, but Judge Green's later opinion seems to indicate there were none.

This case, then, presents the novel question whether, if the Board of Inquiry report is to be deemed privileged, the statements made to it by Hospital personnel are privileged as well. It is true that criticism will probably flow more easily if comment is known to be privileged. But the threat of disciplinary action alone, quite aside from suits for damages, has a chilling effect on testimony. Such distortion of an incident as there may be in order to blind the Board of Inquiry is as likely to occur for the purpose of averting disciplinary action as it is to avoid damages in litigation. Aside from the normal tendency for self-exculpation, we do not believe that a narration of the facts will be more inhibited at the Board level than it would be in a court room, even if its pre-trial discovery is predictable.

The statements of Hospital personnel as to what actually happened are important to the plaintiff in her discovery of the facts and to forestall recent contrivance. Statements taken shortly after an occurrence are unique and can never be duplicated precisely. See Guilford Natl. Bank of Greensboro v. Southern R. R., 297 F.2d 921 (4 Cir. 1962); Thomas v. Penn. R. R., 7 F.R.D. 610 (E.D.N.Y. 1947). That the decedent is not here to testify or help counsel is also a factor weighing in favor of the plaintiff. See Hesch v. Erie R. Co., 14 F.R.D. 518 (N.D.Ohio 1952).

Yet, because of the very nature of the inquiry at the Hospital, comments for future improvements of procedure were elicited which have no relevance to the litigation. Hospital employees should be made to feel they can speak up freely.

The Court has read the statements in question and finds that a distinction can be made between testimony about the incident and suggestions for future procedures. The Government should produce such parts of the statements as contain testimony about the incident excising those parts which are directed to suggestions or comments on future hospital procedures.

So ordered.