Bruce McM. WRIGHT, Plaintiff,

v.

The PATROLMEN'S BENEVOLENT ASSOCIATION et al., Defendants.

No. 75 Civ. 658 (CMM).

United States District Court,
S. D. New York.

Sept. 23, 1976.

Rhonda Copelon, Center for Constitutional Rights, New York City, for plaintiff.

George G. Gallantz, New York City, for the Association of the Bar of the City of New York and for Cyrus R. Vance; Barry R. Ostrager, New York City, of counsel.

METZNER, District Judge:

The Association of the Bar of the City of New York (the Association) moves, pursuant to Rule 26(c), Fed.R.Civ.P., for an order precluding plaintiff from deposing Cyrus R. Vance, President of the Association, and Irwin Rochman, a member of the Association's Committee on Criminal Courts, Law and Procedure (the Committee). Plaintiff seeks to depose these individuals with respect to information they received in the course of preparation of a report issued by the Association on April 18, 1975, concerning the transfer of plaintiff from the New York Criminal Court bench to the Civil Court bench.

The Association is not a party to this action in which plaintiff seeks declaratory and injunctive relief, as well as damages for the alleged violation of his civil rights. The allegations upon which the action is based have been set forth in prior opinions of this court, *Wright v. Patrolmen's Benevolent Association,* 75 Civ. 658 (S.D.N.Y. March 17, 1975 and June 9, 1975), and need not be repeated here.

The publicity and public debate that accompanied the transfer of plaintiff from the Criminal to the Civil Court prompted the Association to undertake an investigation of that transfer through the Committee. During the course of this investigation, Messrs. Vance and Rochman met with Chief Judge Charles D. Breitel of the Court of Appeals, State Administrative Judge Richard J. Bartlett, and New York City Administrative Judge David Ross. The Committee's report stated that Chief Judge Breitel took responsibility for the transfer but refused to state publicly his reasons for it. The report stated that he told the Committee that the transfer was within his administrative discretion and not a proper subject for public discussion. He further told the Committee that pressures from outside the judiciary played no part in his decision. The report stated that Judge Ross, who transferred plaintiff and who is a defendant in this action, also took responsibility for the decision to transfer plaintiff. The report concluded that the transfer was unwise and that Judge Wright should be reinstated to the Criminal Court bench.

Plaintiff now seeks to obtain from Vance and Rochman all the information they received during their investigation. Plaintiff has obtained a so-called draft insert to the report which was not included in the final version. Plaintiff contends that the draft insert contains an "off-the-record" state-

ment by Judge Breitel which constitutes an "admission of wrongdoing" on his part and which is necessary to the proof of plaintiff's claim that the transfer was motivated by reasons which violate his right to equal protection under the fourteenth amendment.

Vance has submitted an affidavit to the effect that information was furnished to him and Rochman by the judges on a confidential basis. The Association argues that confidentiality is essential to its function of investigating and reporting to the Bar and public on matters concerning the judicial system.

It is necessary to start with the recognition that " 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972) (citations omitted). Such privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

■ The court of course has wide discretion to limit discovery where there is a showing of good cause. In *Kaufman v. Edelstein,* 539 F.2d 811 (2d Cir. 1976), the court, in refusing to find the existence of a privilege which protected experts from testifying, stated:

"But to say, as we do, that there is no privilege to withhold testimony simply because it represents the result of study or experience does not entail a holding that courts may never extend protection when good cause is shown." (at 821).

The Association asserts two claims to protection in this motion. I find that they have shown neither the existence of a privilege nor of good cause sufficient to overcome plaintiff's right to discovery of all relevant evidence.

■ The Association first claims to be protected by the first amendment in that it provides information to the public in the same manner as does the press. The Asso-

ciation claims the quasi-privileged status sometimes afforded the press, citing *Baker v. F & F Investment,* 339 F.Supp. 942 (S.D. N.Y.), aff'd, 470 F.2d 778 (2d Cir. 1972), in which the court denied plaintiff's motion to compel a magazine writer to reveal the source of his story. While finding that no absolute journalist's privilege existed, Judge Bonsal found that freedom of the press and the public's right to know would be impaired if reporters were in all instances required to divulge their sources. He reached his decision by balancing the plaintiff's interest in the requested discovery with the first amendment interest sought to be protected.

I am unable to apply the concept of a qualified privilege for journalists to the facts involved here. In its refusal to hold that the first amendment provided a newsman's privilege, the Supreme Court cited the very problem I see here. That problem inheres in the necessity to define those categories of newsmen who would qualify for the privilege:

"a questionable procedure in light of the traditional doctrine that liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods. . . . Almost any author may quite accurately assert that he is contributing to the flow of information to the public, that he relies on confidential sources of information, and that these sources will be silenced if he is forced to make disclosures before a grand jury." *Branzburg v. Hayes, supra* 408 U.S. at 704–05, 92 S.Ct. at 2668.

The Association cites cases in which first amendment protection was extended to persons other than journalists, *Richards of Rochford, Inc. v. Pacific Gas & Electric Co.,* 71 F.R.D. 388 (N.D.Cal.1976) (protection extended to scholar's research), and *Apicella v. McNeil Laboratories,* 66 F.R.D. 78 (E.D. N.Y.1975) (protection extended to a medical news letter). I find these distinguishable in that in both cases the sources and the infor-

mation sought truly were confidential. In the instant case the sources are known and the information that plaintiff wants to verify and expand is also known. The Association's claim to confidentiality is necessarily weakened by the fact that the draft insert was in some manner furnished to plaintiff.

The two cited cases are also distinguishable in that in both the court found that the information sought did not go to the heart of plaintiff's claims. The information sought by plaintiff here does go to the heart of his claim that his transfer violated his constitutional rights and, under the standard of *Garland v. Torre,* 259 F.2d 545 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), is therefore discoverable.

The Association's second claim is that the preparation of the report was an exercise of its self-evaluative function with respect to the legal profession and, as such, the underlying testimony, documents and deliberations of the Committee are privileged. Assuming that such a privilege exists, it is only a qualified privilege which the cases cited by the Association make clear. In *Gillman v. United States,* 53 F.R.D. 316 (S.D.N.Y.1971), plaintiff sought discovery of reports prepared by a hospital board of inquiry during the course of investigating the suicide of plaintiff's husband. Although the court ordered the comments of hospital personnel as to improvement of hospital procedures protected from discovery, it did order that their statements concerning the occurrence of the suicide be produced. Similarly, in *Banks v. Lockheed-Georgia Company,* 53 F.R.D. 283 (N.D.Ga. 1971), the court ordered the defendant to produce the factual and statistical information it had gathered, and held privileged only the opinions and conclusions derived from the factual information. Here, plaintiff seeks only the information gathered by the Committee, and not its deliberations.

▆▆▆ Finally, the Association argues that the information sought is discoverable from other sources and that the Association should not be required to produce it until plaintiff has deposed the Chief Judge. A litigant is not limited by Rule 26(b), Fed.R. Civ.P. in obtaining information "reasonably calculated to lead to the discovery of admissible evidence," by the possible existence of other avenues of inquiry.

The Association's claim of exemption in this motion fails to overcome the "primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." 8 Wigmore, *Evidence* § 2192 at 70 (McNaughton rev. 1961).

The motion for a protective order is denied.

So ordered.