No. 54,498

DAVID BERST, DALE SMITH and THE NATIONAL COLLEGIATE ATH-
LETIC ASSOCIATION, *Petitioners,* v. HONORABLE MARION W. CHIP-
MAN, DISTRICT JUDGE, COURT NUMBER 7, 10th JUDICIAL DISTRICT
COURT OF KANSAS, and BIRMINGHAM POST COMPANY, *Respon-
dents.*

(653 P.2d 107)

Opinion filed November 12, 1982.

*James H. McLareny,* of Swanson, Midgley, Gangwere, Clarke & Kitchin, of
Kansas City, Missouri, argued the cause, and *Daniel L. Sailler,* of the same firm,
and *Robert P. Anderson* and *Edward M. Boyle,* of Payne & Jones, of Olathe, were
with him for the petitioners.

*Lee Levine,* of Baker & Hostetler, of Washington, D.C., argued the cause, and
*Elizabeth Moore,* of the same firm, and *Alan P. Blinzler* and *Peter A. Martin,* of
Blackwell, Sanders, Matheny, Weary & Lombardi, of Olathe, were with him for
the respondents.

The opinion of the court was delivered by

SCHROEDER, C.J.: This original mandamus action filed May 20, 1982, was heard by the court on May 21, 1982, and resulted in the announcement of our decision on May 27, 1982, by the filing of our abbreviated opinion in *Berst v. Chipman*, 231 Kan. 369, 653 P.2d 106 (1982). This formal opinion is supplemental thereto. The mandamus action was brought by petitioners David Berst, Dale Smith and the National Collegiate Athletic Association (NCAA), with office headquarters in Johnson County, Kansas, seeking to set aside the order of the District Court of Johnson County denying petitioners' motion for a protective order pursuant to K.S.A. 60-226(c). The precise issue presented is whether the petitioners have a legal interest in protecting information obtained in the course of confidential investigations from discovery in a libel action in the State of Alabama to which they are not parties.

As related by the facts recited in the prior opinion, documents were sought to be discovered from the petitioners by the Birmingham Post Company in connection with its defense of a libel action filed in the Circuit Court of Madison County, Alabama. The plaintiff in that action, Edward E. Seal, principal of Butler High School in Huntsville, Alabama, alleged that the Birmingham Post Company and others published defamatory statements in an article in the Birmingham Post-Herald newspaper regarding investigations by the newspaper and the NCAA into the recruitment of a high school basketball player, Bobby Lee Hurt, by the University of Alabama. Subsequently Hurt filed a libel action against the Birmingham Post in connection with alleged defamatory statements appearing in the same newspaper. The petitioners are not parties to either of the foregoing actions.

The documents in question were obtained by the NCAA in the course of its investigation into possible violations of NCAA rules which occurred during Hurt's recruitment by the University of Alabama. As a result of an article alleging the University of Alabama had improperly recruited Hurt, appearing in the Birmingham Post-Herald prior to the article giving rise to the libel action involved here, the NCAA directed Dale Smith, a member of its staff, to investigate the University of Alabama's conduct. Smith interviewed several people who had information relevant to the NCAA's investigation, assuring them that the source and

substance of any information he received was confidential. These sources included Hurt, Seal, co-workers of Seal, Hurt's basketball coach, collegiate coaches from institutions other than the University of Alabama who also recruited Hurt, and other individuals in the community who had information relevant to the recruitment. The content of these interviews was later reduced to written memoranda by Smith which were placed in the NCAA's confidential file on the investigation. Prior to the publication of the article giving rise to the libel action, the newspaper's request for information regarding the NCAA's investigation was denied based on the NCAA's policy that any information obtained in the course of an investigation is confidential.

To protect the confidential nature of the file the petitioners filed a motion for a protective order in the District Court of Johnson County to quash the newspaper's discovery request. The petitioners alleged the request was overbroad, vague and indefinite; many of the documents sought were totally irrelevant to any issue in the libel action; and disclosure of such confidential information would infringe on the rights of persons who are not parties to the libel action, either from whom the NCAA had received information, or to whom information in the file related. After a full hearing the court denied the petitioners' motion. An in camera inspection of the NCAA's file was not conducted. The court reasoned:

"4. The movants in this case do not come within any of the privileges created by the statutes of this state. Plaintiffs claim and the Court holds that trial courts are vested with broad discretion in supervising course and scope of discovery. In the proper exercise of this discretion, the Court must weigh the interests of the private litigants in obtaining the information against whatever public interest may exist in maintaining confidential relationships. . . .

. . . . .

"6. Plaintiff's contention that if the information contained in its files is made public, that then the NCAA will be powerless to gain information regarding alleged violations of its rules, is outweighed by the importance of the defendants needing access to relevant information that may lead to admissible evidence to defend itself from the allegation of libel so that defendants may continue to exercise, without fear, their rights under the First Amendment to the Constitution of the United States." (Citations omitted.)

Following the court's decision, subpoenas were issued ordering the petitioners to appear for depositions on May 21, 1982. On May 20, 1982, a petition for mandamus was filed by petitioners in this court seeking an order that a protective order be issued. Due

to urgency of the matter and public interest involved, arguments were heard by this court on May 21, 1982. After conducting an in camera inspection of the NCAA's file this court issued a protective order on May 27, 1982. This order allowed the Birmingham Post Company to discover only specified statements made to Dale Smith by the litigants, their fellow employees and other individuals, which were *specifically relevant to the libel action.* This decision was based on the following considerations.

At the outset we note that the trial court is vested with broad discretion in supervising the course and scope of discovery. *Vickers v. City of Kansas City,* 216 Kan. 84, Syl. ¶ 2, 531 P.2d 113 (1975). Though the trial court's discretion cannot be controlled by mandamus, where an order of the trial court denies a litigant a right or privilege which exists as a matter of law, and there is no remedy by appeal, mandamus may be invoked. *Hulme v. Woleslagel,* 208 Kan. 385, 493 P.2d 541 (1972). In addition, where a petition for mandamus presents an issue of great public importance and concern, the court may exercise its original jurisdiction in mandamus and settle the question. See *Mobil Oil Corporation v. McHenry,* 200 Kan. 211, 239-43, 436 P.2d 982 (1968); *A.T. & S.F. Hospital Ass'n v. State Commission of Revenue & Taxation,* 173 Kan. 312, 316, 246 P.2d 299 (1952).

Whether the petitioners have a protectable interest in maintaining the confidentiality of their private investigation into possible infractions of NCAA rules undoubtedly presents a legal question of significant public interest. Substantially affected are the privacy interests of those persons to whom information in the file relates or who have passed on information to the NCAA under a pledge of confidentiality, as well as the NCAA's ability to perform one of its primary functions, that of policing its own ranks to prevent corruption in collegiate athletics. The petitioners would not have a remedy by appeal as the information sought would irretrievably have been disclosed prior to the time in which an appeal could be taken. Thus, a mandamus action may properly be entertained. *Muck, Administratrix v. Claflin,* 197 Kan. 594, 596, 419 P.2d 1017 (1966).

To fully appreciate the NCAA's high degree of interest in preserving the confidentiality of their investigation files and the identities of their sources, it is helpful to understand the self-policing function of the NCAA and how this system operates.

Briefly, the NCAA is a voluntary organization composed of approximately 750 colleges and universities throughout the United States. One of the primary duties of the NCAA is to enforce regulations governing the recruiting, admissions, financial aid, and academic standards aspects of collegiate athletics at member institutions.

Investigations by the NCAA of possible rules infractions are conducted in the strictest of confidence pursuant to internal rules of the NCAA. It is undisputed that investigators must rely on confidential sources for much of their information. Generally, any information an investigator comes across during his inquiries is placed in the NCAA's confidential file on that investigation. In any one of the NCAA's investigation files there may be allegations and speculation about an individual's sexual preferences, mental capacity, drug and alcohol use, and financial condition; academic records of students, anonymous letters and memoranda of telephone calls, and internal memoranda of interviews which contain the investigator's mental impressions, speculations and conclusions.

Once the NCAA verifies through an investigation that a possible infraction has occurred, a notice of the allegations is sent to the institution thought to be in violation. The institution then attempts to ascertain all relevant information from the principals involved, including coaches, student-athletes and employees, with much of this information being obtained by the institution under a pledge of secrecy. The college or university then prepares a response to the NCAA inquiry, which is also submitted under promises of confidentiality. All this information is placed in the NCAA's file on the investigation. Further action taken by the NCAA's Committee on Infractions may also be reflected in the file. Once a determination is made on the merits of an infractions case, and the case has been completed, a press release is issued by the NCAA disclosing *only* the institution involved and any sanctions imposed. All other information remains confidential.

The NCAA maintains that its policy of confidentiality has been central to the success of this self-policing system in effect for the past 30 years. The NCAA strongly argues loss of this confidentiality will destroy the system, causing intercollegiate athletics to suffer. Because of the extent of national interest and involvement in intercollegiate athletics, the NCAA asserts there is a strong

public interest in preserving the means by which the NCAA can investigate and supervise the area of college level sports, which outweighs the petitioners' interest in obtaining the information sought for their defense in the libel action. Furthermore, the NCAA is concerned about potential harm to innocent persons not parties to the Alabama lawsuit, who either disclosed information contained in the file or about whom the information relates.

The subpoena duces tecum served on the NCAA, Smith and Berst required them to make available at their depositions:

"[A]ll documents and correspondence relating to the initiation, prosecution and results of any investigation by the National Collegiate Athletic Association concerning Bobby Lee Hurt, Edward Seal, Butler High School, Huntsville, Alabama or the recruiting of Bobby Lee Hurt by the University of Alabama."

It is uncontroverted that the file maintained by the NCAA on its investigation into the University of Alabama's conduct contains information about persons possibly involved in the University of Alabama's recruitment of Hurt, *including information about persons in no way connected with litigants Seal or Hurt, or the newspaper's defense of the libel action.*

A key limitation on a litigant's right to discover material held in the hands of another is that the information sought must be relevant to the issues of the lawsuit. K.S.A. 60-226(*b*) provides in pertinent part:

"Parties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . . It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.)

In *Gleichenhaus v. Carlyle,* 226 Kan. 167, 597 P.2d 611 (1979), this court quoted from *Herbert v. Lando,* 441 U.S. 153, 177, 60 L.Ed.2d 115, 99 S.Ct. 1635 (1979), where the Supreme Court stated:

"The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. [Citations omitted.] But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they 'be construed to secure the just, *speedy,* and *inexpensive* determination of every action.' (Emphasis added.) To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to

restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .' Fed. Rule Civ. Proc. 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process."

We went on to state in *Gleichenhaus,* 226 Kan. at 170:

"The scope of relevancy in a discovery proceeding is broader than the scope of relevancy at trial. Relevancy includes information which may be useful in preparation for trial. A request for discovery would be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the lawsuit."

See also *Governmental Ethics Comm'n v. Cahill,* 225 Kan. 772, 778, 594 P.2d 1103 (1979); *In re Pennington,* 224 Kan. 573, 576-77, 581 P.2d 812 (1978), *cert. denied* 440 U.S. 929 (1979); *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 326, 578 P.2d 1138, *rev. denied* 225 Kan. 843 (1978).

In the libel action the respondent raised the affirmative defense that "the news story and statements complained of are true." Thus, the truth of the statements appearing in the article giving rise to the libel action is a central issue. Information given to Smith and reduced to written memoranda by him specifically concerning the litigants and the subject matter of the article clearly were relevant to the newspaper's primary defense and could have led to other evidence.

However, as the petitioners point out, many documents contained in the NCAA's file are totally irrelevant to any issue in the libel action, pertaining only to the NCAA's investigation into the University of Alabama's conduct, and not relating in any way to the litigants or the issues involved in the action. These latter documents therefore do not fall within the ambit of discoverable evidence under 60-226(*b*) and should have been excluded by limiting the discovery in an order by the trial court.

For this reason the trial court erred in failing to conduct an in camera inspection of the NCAA's file to determine which documents were not relevant and thus not discoverable. An in camera inspection is an appropriate and useful proceeding to ensure that the balance is properly struck between a petitioner's claim of irrelevance and privilege, and a plaintiff's need for the documents. See *Kerr v. United States District Court,* 426 U.S. 394, 405-06, 48 L.Ed.2d 725, 96 S.Ct. 2119 (1976), and cases cited therein; *Application of Eisenberg,* 654 F.2d 1107, 1112 (5th Cir. 1981). When a trial court orders production of confidential rec-

ords, it has a duty to limit the availability and use of documents by carefully drawn protective provisions. See *Jepsen v. Florida Bd. of Regents,* 610 F.2d 1379, 1384 (5th Cir. 1980). We believe when a claim of privilege, confidentiality or irrelevance is raised the court has a duty to conduct an in camera inspection to separate and permit discovery of only the relevant documents, thereby protecting against unnecessary and damaging disclosure of irrelevant confidential material.

As to the documents in the NCAA's file which are relevant to the libel action, a determination must be made whether, as petitioners argue, the interest in maintaining the confidentiality of the NCAA's file outweighs the interest and need of the Birmingham Post Company to discover these documents. Although the petitioners' motion for a protective order was denied by the district court in part because the movants "do not come within any of the privileges created by the statutes of this state" we recognize the existence of a privilege is not necessary in order to limit discovery. This is done under the court's supervisory powers over discovery pursuant to K.S.A. 60-226. *Richards of Rockford, Inc. v. Pacific Gas & Elec.,* 71 F.R.D. 388, 389 (N.D. Cal. 1976); 23 Wright & Graham, Federal Practice and Procedure: Evidence § 5431, p. 823 (1980).

K.S.A. 60-226(*c*) provides in pertinent part:

"*Protective orders.* Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken *may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:*

. . . .

"(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters." (Emphasis added.)

Where the parties have conflicting interests in material sought to be discovered, the protective power of the court may be sought by a party under this provision, and the court must balance the litigant's interest in obtaining the requested information with the resisting party's interest, as well as the public interest in maintaining the confidentiality of the material. See *Zerilli v. Smith,* 656 F.2d 705, 712 (D.C. Cir. 1981); *Keyes v. Lenoir Rhyne College,* 552 F.2d 579, 581 (4th Cir. 1977); *Gray v. Board of Higher Ed., City of New York,* 92 F.R.D. 87, 90-91 (S.D.N.Y.

1981); *Richards of Rockford, Inc. v. Pacific Gas & Elec.,* 71 F.R.D. at 389; *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78, 82 (E.D.N.Y. 1975). In *Alseike v. Miller,* 196 Kan. 547, 555, 412 P.2d 1007 (1966), while discussing the provisions of K.S.A. 60-230(*b*) (Corrick) which have since become 60-226(*c*), we stated:

"Under [60-230(*b*)] if significant countervailing considerations appear, such as, for example, something in the nature of a qualified privilege as mentioned therein (to be distinguished from a testimonial privilege), the protective power of the court may be brought into play to strike a fair balance of the competing interests, and such power may also be used to prevent annoyance, undue expense, embarrassment or oppression."

In balancing the interests involved herein it must be recognized the parties involved in the lawsuit have a great interest in the revelation of all pertinent facts. It is an oft-quoted doctrine that the public has a right to every man's evidence; there is a general duty to give what information one is capable of and any exemptions are exceptional, being in derogation of a positive general rule. 8 Wigmore on Evidence § 2192, p. 70 (McNaughton rev. 1961); *United States v. Bryan,* 339 U.S. 323, 331, 94 L.Ed. 884, 70 S.Ct. 724 (1950). Accordingly, this court noted in *Alseike v. Miller,* 196 Kan. at 554:

"The provision for the production of documents is an integral part of the discovery process. Discovery has a vital role in our code of civil procedure with its notice type pleading and its basic philosophy that mutual knowledge of all relevant facts is essential to the proper disposal of litigation and that prior to trial every party to a civil action is entitled to the disclosure of all such information in the possession of any person, unless the information is privileged (see 2A Barron and Holtzoff, Depositions, § 641). Our code of civil procedure is to be liberally construed to secure the just, speedy and inexpensive determination of every action (K.S.A. 60-102)."

Several courts have identified guidelines to determine how a balance should be struck between competing interests in a particular case. In *Richards of Rockford, Inc.,* the court drew from cases involving the qualified First Amendment privilege of newsmen not to testify, to identify the following factors in striking a balance between discovery and nondisclosure:

"[T]he nature of the proceeding, whether the deponent is a party, whether the information sought is available from other sources, and whether the information sought goes to the heart of the claim." 71 F.R.D. at 390.

Additional guidelines considered in balancing claims of privilege

with the need for disclosure include the degree of harm that would be caused by disclosure and the type of controversy before the court. See *Zerilli v. Smith,* 656 F.2d at 713-14; *Gray v. Board of Higher Ed., City of New York,* 92 F.R.D. at 91. Also, the public interest may be a reason for not permitting inquiry into particular matters by discovery. 4 Moore's Federal Practice ¶ 26.60(3) (1970), and cases cited therein; *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249, 250 (D.D.C. 1970), *aff'd* 479 F.2d 920 (D.C. Cir. 1973).

Wigmore identified four fundamental conditions necessary to establish a qualified privilege against disclosure of confidential communications:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

"(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." 8 Wigmore on Evidence § 2285, p. 527 (McNaughton rev. 1961). (Emphasis in original.)

Applying these principles, a number of recent decisions have refused to order the disclosure of confidential communications, based either on the finding of a qualified privilege or pursuant to the court's supervisory powers under Fed. R. Civ. P. 26(*c*). A brief overview of these cases for the purpose of illustration is warranted.

The failure to exhaust available alternative sources of information was the determinative factor in the refusal to compel discovery of confidential material in several cases. See *Zerilli v. Smith,* 656 F.2d at 714-15 (nonparty reporter's source sought in an action brought under the Privacy Act and the Fourth Amendment); *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. at 85 (source for article appearing in medical newsletter sought in medical malpractice action); *McKillop v. Regents of University of California,* 386 F. Supp. 1270, 1278 (N.D. Cal. 1975) (confidential evaluations of plaintiff's performance by defendant university's faculty members, administrators and committees sought by plaintiff challenging denial of tenure by defendant).

A second factor, the public interest in maintaining the confi-

dentiality of certain types of reports and inquiries, has been held sufficient to deny discovery in several decisions. For example, the "overwhelming public interest" in the continued improvement of hospital care has been deemed sufficient to outweigh the need for discovery of confidential hospital evaluation reports. See *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. at 250-51 (minutes and reports of hospital medical staff review committee not discoverable); *Gillman v. United States,* 53 F.R.D. 316, 318-19 (S.D.N.Y. 1971) (report of hospital inquiry into patient suicide not discoverable; however, testimony of hospital personnel taken by board of inquiry regarding suicide was discoverable). See also 23 Wright & Graham, Federal Practice and Procedure: Evidence § 5431, pp. 835-40 (1980).

Similarly, self-evaluation reports prepared by businesses in the development of affirmative action programs under Title VII have been protected from discovery because such reports foster an important government interest in frank evaluations conducive to compliance with the law. See *Banks v. Lockheed-Georgia Company,* 53 F.R.D. 283, 285 (N.D. Ga. 1971); *O'Connor v. Chrysler Corp.,* 86 F.R.D. 211, 218 (D. Mass. 1980); *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53, 58-59 (E.D. Pa. 1979). See also 23 Wright & Graham, Federal Practice and Procedure: Evidence § 5431, p. 43 (1981 Supp.).

The public welfare served by nondisclosure of personnel files of public employees has also been held to outweigh the interest in discovery. See *City Council v. Superior Court,* 204 Cal. App. 2d 68, 76, 21 Cal. Rptr. 896 (1962); *Wisher v. News-Press Publishing Co.,* 310 So. 2d 345, 348 (Fla. Dist. Ct. App. 1975). See also *Evans v. Department of Transportation of United States,* 446 F.2d 821, 824 (5th Cir. 1971) (identity of person questioning airline pilot's mental health held not discoverable as public safety would be seriously jeopardized if people could not call attention to certain facts in confidence to Federal Aviation Administration, which is entrusted with investigating health of pilots).

The public interest in maintaining confidential relationships between academic researchers and their sources outweighed the plaintiff's interest in satisfying its discovery request in *Richards of Rockford, Inc.,* 71 F.R.D. at 390, where the court held a nonparty deponent in a breach of contract action could not be compelled to produce documents concerning confidential inter-

views with employees of the defendant. See also 23 Wright & Graham, Federal Practice and Procedure: Evidence § 5430 (1980). The societal value in academic freedom has also been found sufficient to outweigh disclosure of confidential faculty tenure evaluation reports. See *Gray v. Board of Higher Ed., City of New York,* 92 F.R.D. at 92-94; *McKillop v. Regents of University of California,* 386 F. Supp. at 1275-78. See also *Keyes v. Lenoir Rhyne College,* 552 F.2d at 581.

On the other hand, several courts have agreed that where the information goes to the "heart of the plaintiff's claim" the litigant's interest in the discovery of all relevant facts outweighs any confidentiality interests. See *Carey v. Hume,* 492 F.2d 631, 636-37 (D.C. Cir. 1974); *Garland v. Torre,* 259 F.2d 545, 550 (2nd Cir.), *cert. denied* 358 U.S. 910 (1958); *Zerilli v. Smith,* 656 F.2d at 713; *Robinson v. Magovern,* 83 F.R.D. 79, 89 (W.D. Pa. 1979); *Wright v. Patrolmen's Benev. Ass'n.,* 72 F.R.D. 161, 164 (S.D.N.Y. 1976). This is particularly true in a libel action, where information held by another may be crucial to a claim or defense raised. *Carey v. Hume,* 492 F.2d at 636-37; *Garland v. Torre,* 259 F.2d at 551. In *Garland,* actress Judy Garland brought an action against Columbia Broadcasting System for defamatory statements appearing in an article by respondent Torre which allegedly had been made by a CBS network executive. Torre refused to disclose her source, claiming the information was confidential and that it was protected by a First Amendment newsmen's privilege. The information was held to be discoverable because the information sought "went to the heart of the plaintiff's claim," and therefore outweighed the First Amendment concerns involved. 259 F.2d at 550.

The holdings in two cases finding the confidentiality interest to be outweighed are particularly relevant to the situation involved here. In *Wright v. Patrolmen's Benev. Ass'n,* 72 F.R.D. 161, information gathered by the nonparty New York City Bar Association was discoverable because it went to the central issue in the lawsuit, despite the Association's protests that preserving the confidentiality of the information was essential to its function of investigating and reporting on matters concerning the judicial system. Similarly, although there was a "powerful interest in confidentiality" for hospital review proceedings because of the important state interest in improving health care, the court in

*Robinson v. Magovern,* 83 F.R.D. at 89, held the plaintiff's need for relevant evidence required the disclosure of the information sought where it went to the very essence of the issue in the case.

We recognize this case presents a conflict between highly valued interests. On the one hand there is an interest in confidentiality, both to prevent embarrassment to persons who have relied on pledges of secrecy in disclosing information to the NCAA or about whom information in the file may relate, and to promote the public interest in the supervision of intercollegiate athletics to prevent corruption in that area and retain a clear line of demarcation between college athletics and professional sports. On the other hand is the interest in disclosure of all facts relevant to the respondent's defense in the libel action which will contribute to a full and fair determination of the issues in that case. This case presents a situation where a compromise solution must be reached which will sufficiently serve the interests of both parties.

To protect itself from liability it was necessary for the respondent Birmingham Post Company to acquire information to support its claim that the statements published by the newspaper concerning Seal and Hurt were true. Because of its investigation into the recruitment of Hurt the NCAA had obtained information about the involvement of both Hurt and Seal in various activities. While it may have been possible for the respondent to gather on its own the same information about the litigants which was obtained by the NCAA through its investigation, the newspaper may have had to go on a "fishing expedition" to discover who, if anyone, had knowledge of the events which were reported in the alleged libelous article. The respondent also had a limited amount of time in which to conduct an investigation and depose those persons with relevant information, as a trial was scheduled in the libel action for August 16, 1982, approximately three months after this motion was made in the trial court.

Of the information contained in the NCAA's file which pertained to the litigants and the subject matter of the libel action, we required the disclosure of oral statements and comments of the litigants, their employers and fellow employees from Butler High School, made in person or by telephone to Dale Smith and reduced to written memoranda bearing the typed signature of Smith. These memoranda contain information directly relating to a central issue in the Alabama lawsuit, that of the truth or falsity

of the information reported in the subject publications. The cases cited above emphasize that even a strong interest in confidentiality is outweighed when the information sought goes to the very essence, or "heart," of the issues in the case. This is the situation presented here. Therefore, while we recognize the interest in preserving the confidential nature of these memoranda is substantial, it must give way to assure all the facts will be available for a fair determination of the issues in the libel action.

We think the result reached here is fair to the interests of both parties, affording each some degree of relief. A protective order specifically enumerating those documents we found to be discoverable was filed with the Clerk of the Supreme Court of Kansas on May 27, 1982, when our original opinion in abbreviated form was filed announcing our decision limiting discovery and entering judgment for the petitioners.

HERD, J., dissenting: When I weigh the conflicting interests in the material sought to be discovered, I come down on the side of protecting the public interest. The public has an overwhelming interest in fostering and supporting the self-regulation engaged in by the colleges and universities under the auspices of the NCAA. Television has injected such a large amount of money into college athletic programs the temptation to cheat in recuitment of athletes is overwhelming. In the absence of NCAA regulations and sanctions, the so-called "athlete factories" consisting of twenty to thirty major universities would outbid all others for talent, then pay for it with television exposure. Such would ring the death knell of college athletics as presently constituted. I consider the present system worth maintaining. This can be accomplished only through regulation, investigation and sanctions, either by the NCAA or the government.

Since the NCAA does not have subpoena power, its investigation of complaints is dependent upon a pledge of confidentiality. The majority opinion successfully removes that technique and will ultimately eliminate NCAA regulation or force it to obtain subpoena power. I prefer self-regulation to other options, therefore I dissent.

FROMME, J., dissenting.