No. 63,127

KANSAS GAS ELECTRIC, A CORPORATION, *Appellee*, v. ROBERT VINSON EYE; MARY M. STEPHENS, a/k/a "Stevi" Stephens; AL-LIANCE FOR LIVABLE ELECTRIC RATES, an unincorporated as-sociation, d/b/a ALERT; and NUCLEAR AWARENESS NETWORK, INC., a Corporation, d/b/a NAN, *Appellants*.

(789 P.2d 1161)

Opinion filed April 13, 1990.

*Robert Vinson Eye*, of Nuclear Awareness Network, of Lawrence, and *Pedro L. Irigonegaray*, of Irigonegaray, Eye & Florez, of Topeka, argued the cause and were on the briefs for appellants.

*Mark A. Vining*, of Kansas Gas & Electric Company, of Wichita, argued the cause, and *Arthur E. Palmer* and *Marla J. Luckert*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, were with him on the brief for appellee.

*Patricia R. Hackney*, of Lawrence, was on the brief *amicus curiae* for American Civil Liberties Union.

The opinion of the court was delivered by:

HERD, J.: This is a civil action. Robert Eye, Mary Stephens, a/k/a "Stevi" Stephens, Alliance for Livable Electric Rates (ALERT), and Nuclear Awareness Network (NAN) appeal from the district court's judgment granting Kansas Gas & Electric's (KG&E) prayer for replevin and a permanent injunction, the denial of appellants' counterclaims, and the district court's denial of a motion to permit supplemental pleadings.

This controversy developed from the following scenario, much of which is familiar to us from a previous case. *Kansas Gas & Electric Co. v. Kansas Corporation Comm'n*, 239 Kan. 483, 720 P.2d 1063 (1986). KG&E constructed and operated the Wolf Creek Generating Station (Wolf Creek), a nuclear power plant located in Coffey County. KG&E and its co-owners, Kansas City Power & Light Company (KCPL) and Kansas Electric Power Cooperatives, Inc. (KEPCO), established the Wolf Creek Nuclear Operating Corporation (WCNOC) as a wholly owned subsidiary and the acting operating agent of Wolf Creek. WCNOC succeeded KG&E as the operator of Wolf Creek on January 1, 1987.

Previously, in March of 1984, while KG&E was the plant operator it established a "whistle-blower" program. This program was initiated to improve the start up, operation, maintenance, testing, and decommissioning, as well as some design and construction matters, of the Wolf Creek nuclear facility. To attain

the desired improvement, KG&E established a mechanism for employees of the plant to voluntarily and confidentially report to an independent organization any suggestions or concerns they might have with regard to safety or efficiency of the construction or operation of Wolf Creek. Quality First is that independent organization. Under the Quality First Program, all employee concerns are to be resolved in a timely and cost-efficient manner. All Wolf Creek employees are encouraged to make their concerns known to Quality First.

Because confidentiality was considered a critical element of the Quality First Program, KG&E adopted a confidentiality agreement for the use and protection of all the Wolf Creek workers who provided information under the program. Each worker was also required to execute a nondisclosure agreement. In a further effort to protect the confidentiality of Quality First documents and records, the Quality First files were kept in a central location separate and apart from other KG&E records. These files were locked in cabinets under the sole control of Quality First personnel. The making of copies of any part of the files was prohibited. Information in the files was made available to persons outside the program only upon a "need to know" basis to be determined by the Quality First manager.

A Quality First file contains various accumulated documents including, but not limited to: a concern disclosure statement; a confidentiality agreement; investigative work plans; notes; work papers; safety evaluation reports; and the notes of personal impressions, reflections, and opinions of Quality First personnel.

KG&E has authorized disclosure of the Quality First files on several occasions. The files were made available to the Nuclear Regulatory Commission (NRC) during safety inspections on a confidential basis which prohibited copying or removal from the Quality First area. The files were also made available to the Kansas Corporation Commission (KCC) for review as a part of the Wolf Creek rate case hearings. Preliminary to the KCC hearings, Commissioner Keith Henley reviewed the files in total to determine if they had any rate-making significance. Copying was prohibited. Subsequent to Henley's review, approximately twenty files were transported to Topeka for review by the full Commission. Two files and a portion of a third were provided to parties in the rate

case for review and use in cross-examination of witnesses. Again, copying was prohibited and all the files were returned to KG&E.

Several unauthorized disclosures of Quality First files have taken place. During the Wolf Creek rate case, copies of portions of two files were produced by Robert Eye, appellant and attorney for ALERT, an intervenor in the rate case. Neither Eye nor ALERT were authorized to have copies of such files. Eye received his copies of the files from Mary Stephens. She received her copies of the files as director of NAN. Stephens and NAN are unauthorized possessors of copies of the Quality First files. Eye, ALERT, Stephens, and NAN retain possession of portions of copies of approximately sixty-eight Quality First files.

On June 10, 1985, KG&E filed a petition seeking to recover all original or copies of files in the possession of appellants and to temporarily and permanently enjoin appellants from disclosing, reproducing, and disseminating the subject information. On the same day, the district court granted an ex parte temporary restraining order and notice of hearing for a temporary injunction. After a full trial, the district court granted KG&E an order of replevin for any copies of Quality First files within appellants' possession and a permanent injunction as sought. The district court denied appellants' counterclaims of a constitutional right to disseminate information pertaining to the efficiency and safety of the nuclear power plant. The court also denied appellants' claim that KG&E violated the federal and state constitutions in the manner it obtained the temporary restraining order. The district court also denied appellants' post-trial motion to supplement the record and file a supplemental pleading. This appeal followed.

The first issue on appeal is whether the district court erred in holding the Quality First files are protected by the copyright laws.

The district court determined the question of whether KG&E was the owner of the copies of the files turned upon an analysis of copyright law. The court then ruled that the Quality First information falls within the purview of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, or alternatively, that the information qualifies for common-law copyright protection. We disagree.

Let us examine the copyright laws.

17 U.S.C. § 102 (1988) of the Copyright Act provides:

"(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

"(1) literary works;

"(2) musical works, including any accompanying words;

"(3) dramatic works, including any accompanying music;

"(4) pantomimes and choreographic works;

"(5) pictorial, graphic, and sculptural works;

"(6) motion pictures and other audiovisual works; and

"(7) sound recordings.

"(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

We note subsection (b) specifically states that copyright protection does not extend to ideas, procedures, or discoveries. Therefore, appellants contend, the information contained in the Quality First files is not statutorily protected. KG&E claims the files are original works of authorship and thus protected by the Act. Both parties rely on *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 85 L. Ed. 2d 588, 105 S. Ct. 2218 (1985). A review of that case is necessary.

In *Harper & Row*, the petitioners were copyright holders of publication excerpts of former President Gerald Ford's memoirs. Petitioners entered a pre-publication licensing agreement with Time magazine under which Time purchased the right to excerpt 7,500 words from President Ford's memoirs. Before Time released the article, however, an unauthorized source provided The Nation Magazine with the unpublished manuscript. The Nation produced an article which contained, verbatim, quotes of copyrighted expression. As a result, Time cancelled its article and refused to pay the remaining balance to petitioners. Subsequently, petitioners brought suit alleging conversion, tortious interference with contract, and violations of the Copyright Act. 471 U.S. at 542-43.

The United States Supreme Court stated that "copyright is intended to increase and not to impede the harvest of knowledge." 471 U.S. at 545. The Court further recognized that § 102 of the Copyright Act limits copyright to "expressions" that display

the author's originality; however, the Court also stated that even a compilation of pure fact entails originality. 471 U.S. at 547. Although the autobiography consisted of a factual narrative, the Supreme Court concluded it was protected by copyright from unauthorized reproduction. 471 U.S. at 548.

It is well established that originality is the essence of copyright protection and even compilations of fact are within the scope of protection where original skill, labor, and judgment are expended in creating the compilation. 17 U.S.C. § 103 (1988); *Southern Bell Tel. & Tel. v. Assoc. Telephone Dir.*, 756 F.2d 801 (11th Cir. 1985); 18 Am. Jur. 2d, Copyright and Literary Property §§ 19, 43. In order to determine whether a compilation of non-copyrightable facts warrants copyright protection, the originality involved in the selection and arrangement of those facts must be examined. 1 Nimmer on Copyright § 2.04(B) at 2-41 to -42 (1989). A compiler of pre-existing materials must contribute more than minimal skill and judgment to satisfy the originality requirement of 17 U.S.C. § 102. Under this standard, any contribution to pre-existing material must render the derivative work substantially different from the underlying work in order to make it copyrightable. 18 Am. Jur. 2d, Copyright and Literary Property § 42.

As stated in the facts, a Quality First file may contain a concern disclosure statement, confidentiality agreement, investigative work plans and papers, notes, and safety evaluation reports.

KG&E contends the Quality First files involve original statements by writers, materials gathered through investigation, and other reports. Therefore, KG&E argues, the factual material and ideas contained in the Quality First documents, when combined with an author's original contributions, form copyrightable work. We do not agree. Clearly, these individual reports contain facts which are not copyrightable. 17 U.S.C. § 102(b). Nor do we believe the Quality First files constitute a compilation of pre-existing material arranged in such a novel way as to render them an original work of authorship.

KG&E has failed to show how any of the pre-existing materials within the Quality First files have been compiled or arranged to render the facts and ideas contained therein a substantially different underlying work. We believe the facts and ideas within

the Quality First files might have achieved copyrightable protection had someone from KG&E pulled the material together and, through the application of skill and judgment, provided an analysis of the information contained within the Quality First files. See *Wainwright Sec. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977), *cert. denied* 434 U.S. 1014 (1978) (analytical research reports of various industries found copyrightable). Without this required extra step of compilation, however, the facts and ideas contained in the Quality First files remain just that, individual facts and ideas without copyrightable protection.

We also recognize that the material contained within the Quality First files was not intended to be protected by copyright law. In *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984), the United States Supreme Court stated:

" 'The limited scope of the copyright holder's statutory monopoly, like the limited copyright duration required by the Constitution, reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an "author's" creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good.' " 464 U.S. at 431-32 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 45 L. Ed. 2d 84, 95 S. Ct. 2040 [1975]).

In the present case, the Quality First files lack creative labor. Furthermore, providing copyright protection to these facts and ideas does not support the broad public policy of disseminating works of literature. We find the Quality First files are not copyrightable. Therefore, we need not address the other arguments pertaining to copyright.

The next issue we consider is KG&E's claimed right to confidentiality based upon the qualified privilege of self-critical analysis. This self-evaluation has recently been recognized as a privilege designed to encourage self-analysis and self-criticism. Under this theory, it is believed the benefits from corporate internal reviews may outweigh the value of discovery of such reviews. Murphy, *The Self-Evaluative Privilege*, 7 J. Corp. Law 489 (1982). Originally, the privilege was applied in a medical malpractice action, *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D.

249 (D.D.C. 1970), in which the petitioner sought to compel discovery of a hospital committee investigatory report. The court denied discovery based on the rationale that a release of the report would "end candor and criticism in self-deliberations, which the court found necessary to continued improvements in patient care." Note, *The Self-Critical Analysis Privilege and Discovery of Affirmative Action Plans in Title VII Suits,* 83 Mich. L. Rev. 405, 408-09 (1984).

For support, KG&E relies upon *Berst v. Chipman,* 232 Kan. 180, 653 P.2d 107 (1982). The issue in *Berst* was whether information obtained in the course of a confidential investigation could be discovered. The National Collegiate Athletic Association (NCAA) had obtained documents in the course of an investigation of possible NCAA violations at the University of Alabama. 232 Kan. at 181. An Alabama newspaper sought discovery of the documents to aid in its defense of a libel suit. We recognized the NCAA as a voluntary organization whose self-policing function was to enforce NCAA regulations. 232 Kan. at 184. The NCAA argued that confidentiality was central to its success as a self-policing system and that a loss of confidentiality in its investigative files and identities of sources would destroy that system.

In *Berst,* we stated four conditions necessary to establish a qualified privilege against disclosure of confidential communications: (1) the communications must originate in a confidence they will not be disclosed; (2) the element of confidentiality must be essential to the maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury caused by disclosure must be greater than the benefit gained for the correct disposal of litigation. 232 Kan. at 189 (citing 8 Wigmore on Evidence § 2285 [McNaughton rev. 1961]). The *Berst* court cited numerous cases in which the public interest in maintaining confidentiality of certain types of reports outweighed the need for disclosure. Nevertheless, the court concluded that the strong interest in confidentiality was outweighed because the information sought went to the "heart" of the issues. 232 Kan. at 193.

To decide this issue we apply a balance of interests test: Is the injury caused by disclosure of the Quality First files greater than the benefit conferred? This balancing test has been utilized

many times to determine whether a qualified privilege exists against disclosure of confidential communications. *Gray v. Board of Higher Educ., City of New York,* 692 F.2d 901 (2d Cir. 1982); *Zerilli v. Smith,* 656 F.2d 705 (D.C. Cir. 1981). We employed the balancing test in *Berst* and approved it in *Wesley Medical Center v. Clark,* 234 Kan. 13, 25, 669 P.2d 209 (1983).

It is a well established principle that the public has a right to every man's evidence. *United States v. Bryan,* 339 U.S. 323, 331, 94 L. Ed. 884, 70 S. Ct. 724, *reh. denied* 339 U.S. 991 (1950). Any exceptions to the demand for every man's evidence are not lightly created nor expansively construed since they are in derogation of the search for truth. *United States v. Nixon,* 418 U.S. 683, 710, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974). In *Nixon,* the United States Supreme Court ruled that, although the interest in preserving presidential confidentiality was weighty, it did not prevail over the due process of law in requiring the President to turn over certain tape recordings and documents in a criminal proceeding. 418 U.S. at 712.

In the present case, KG&E strenuously argues that confidentiality is essential to the Quality First program. Wolf Creek personnel were encouraged to discuss safety concerns with a promise of confidentiality. KG&E contends disclosure would thwart the shared goal of KG&E and appellants to maintain the safe operation of Wolf Creek and thereby promote public safety. KG&E also claims that harm by loss of the program outweighs the harm of nondisclosure because the information is available through alternative mechanisms, such as the NRC and KCC, without the threat of losing confidentiality.

Appellants assert that self-critical analysis should not be used to shield the public from vital information concerning the safety of nuclear power plants.

It is generally recognized that the maintenance of confidential communications is an important aspect of self-critical analysis and whistle-blower programs. Nevertheless, we believe the public has an overriding interest in the dissemination of information related to costs, construction, and safety practices of nuclear power plants. The Three Mile Island and Chernobyl accidents illustrate the potential public hazard contained in each nuclear plant.

The United States Supreme Court has stated that society has a strong interest in the free flow of commercial information. *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976). So too does society have an interest in the free flow of information regarding potentially harmful and dangerous nuclear power plants. Appellants allege the Quality First files contain information about federal law violations, falsification of documents, and intimidation and harassment of power plant inspectors. Similar to the rationale of *United States v. Nixon*, 418 U.S. 683, release of the information contained withinthe Quality First files is one manner by which KG&E, manager of a potentially dangerous plant, can be held accountable to the public.

KG&E has failed to show that injury caused by the disclosure of confidential information would be greater than the benefit derived by society in obtaining such information. KG&E has not satisfied the conditions set forth in *Berst* necessary to establish a qualified privilege against disclosure of confidential communications. Therefore, KG&E is not entitled to withhold the Quality First information based upon a self-critical analysis privilege. Had a privilege existed under this theory, it was waived when KG&E breached its promise of confidentiality. In addition to the appellants, the Government Accountability Project, the Trial Lawyers for Public Justice, and several congressional staff have had possession of the Quality First files. Numerous newspapers have also obtained and published Quality First file information.

The information acquired by KG&E through its Quality First program is confidential only by agreement of the parties. The public interest in disclosure of all facts relevant to a litigated issue is paramount to the inviolability of a communication made in reliance on a fiduciary or contract relation. 81 Am. Jur. 2d, Witnesses § 141. Courts will not compel production of paper that is of a privileged character and in the hands of a person within the privileged relation, but when such paper comes into the hands of a third party, not a member of the protected relation, it is no longer protected from compelled disclosure. 81 Am. Jur. 2d, Witnesses § 143. An intent to waive one's privilege is not necessary for such a waiver to occur. *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 675 (D.C. Cir.), *cert. denied*

444 U.S. 915 (1979). In the context of the attorney-client privilege, involuntary disclosures of documents through loss or theft are not protected by the privilege, based on the principle that it is the client's and attorney's responsibility to take sufficient precaution to prevent being overheard by third persons. 604 F.2d at 675 (citing 8 Wigmore on Evidence § 2325 [McNaughton rev. 1961]). Confidential documents which come into the hands of third persons are admissible evidence where an attorney permits the papers to pass out of his hands and into those of someone not party to the confidential relationship. *State v. Buffington,* 20 Kan. 599, 614 (1878).

It is established that in the present case we are not concerned with a privileged communication. Rather, the issue is whether information accumulated through an agreement to keep the information confidential remains confidential when involuntary disclosure occurs. In the case at hand, confidentiality is based upon agreement by the parties; however, the same principles apply as those governing involuntary disclosures of privileged and confidential communications.

Quality First information has passed into the hands of persons not a party to the confidentiality agreement entered by KG&E and its employees. Although KG&E kept the files in locked cabinets separate from other business documents, these measures were insufficient to prevent the information from leaking to outsiders. KG&E must bear the burden of this loss. The Quality First files which are now held by third parties have lost all visages of confidentiality. Because the information is no longer confidential, KG&E cannot claim ownership of the facts and ideas within the Quality First files.

To obtain injunctive relief from prospective injury, it must be established that a reasonable probability of such injury exists and an action at law will not afford an adequate remedy. *State ex rel. Stephan v. Pepsi-Cola Gen'l Bottlers, Inc.,* 232 Kan. 843, 845, 659 P.2d 213 (1983).

Appellants contend there is no evidence that dissemination of the Quality First information will cause irreparable harm to KG&E. We have already determined that confidentiality in the Quality First files was lost when appellants obtained the information contained therein. Since confidentiality has already been

lost, an injunction will serve no purpose. KG&E's alleged injury from disclosure of the confidential communications has already occured. KG&E has failed to establish that a reasonable probability of future injury exists. We find, therefore, the district court erred in granting KG&E a permanent injunction.

The final issue is whether the district court abused its discretion in finding that KG&E satisfied the elements of replevin specified in K.S.A. 60-1005. The test on appellate review of whether the district court abused its discretion is whether no reasonable person would agree with the district court. If any reasonable person would agree, we will not disturb the district court's decision. *Hoffman v. Haug,* 242 Kan. 867, 873, 752 P.2d 124 (1988).

In order to recover possession of the Quality First files, KG&E must show the files were specific personal property, that KG&E was the owner and lawfully entitled to possession of the sufficiently described files, that appellants wrongfully detained the files, and the estimated value of the Quality First files. K.S.A. 60-1005.

Appellants contend that the Quality First files are not specific personal property subject to replevin since the files contain information only and KG&E possesses all originals.

Having previously determined KG&E has no property right in the information contained in the files, it logically follows that replevin will not lie to obtain possession of them. We so hold.

In light of our holdings, we need not discuss the other issues. The judgment of the district court is reversed.

SIX, J., not participating.

MILLER, C. J., dissenting: I find myself in agreement with the statements of law contained in the majority opinion, but in disagreement with the application of that law and with the ultimate conclusion reached. I therefore respectfully dissent. The facts are adequately set forth in the majority opinion and will not be repeated here unnecessarily.

The first issue is whether the material is protected by copyright law. I agree with the majority that no copyright protection exists for the documents in issue.

The second issue considered is KG&E's claimed right to confidentiality based upon the qualified privilege of self-critical analysis. The majority opinion sets forth the four conditions necessary to establish a qualified privilege against disclosure, as stated in our opinion in *Berst v. Chipman,* 232 Kan. 180, 653 P.2d 107 (1982), and then determines that the fourth condition is not met, *i.e.,* that the injury caused by disclosure of the Quality First files is less than the benefit conferred. I disagree.

In discussing the Quality First Program, the majority opinion says in part:

"Because confidentiality was considered a critical element of the Quality First Program, KG&E adopted a confidentiality agreement for the use and protection of all the Wolf Creek workers who provided information under the program. *Each worker* was also required to execute a nondisclosure agreement." (Emphasis supplied.)

The *workers* who were required to execute a nondisclosure statement were those persons who were employed within and who administered the Quality First Program. Employees who made their concerns known to Quality First were free to state their concerns to the KCC, NRC, media, public interest groups such as ALERT and NAN, and to the public generally. The Quality First Program did not attempt to muzzle the employees; it merely assured employees who stated their concerns to the program that their names and statements would be held in confidence.

All the Quality First files were made available to the KCC and to the NRC; files selected by those agencies were also made available to counsel at hearings before those commissions, but copies could not be made and the files were returned to Quality First at the conclusion of the hearings. KG&E took every effort to protect the files and the identities of persons who submitted statements of concern to the program.

The vital question is whether the result of the court's opinion will be to increase public safety by making the Quality First files public, or to decrease public safety by rendering ineffective KG&E's safety program. The majority opts for the former; I reach the latter conclusion. The program gives employees a convenient, on-the-job opportunity to voice concerns, with assurance of complete anonymity. The majority opinion torpedoes the program. Employees are always free to express their concerns to public

regulatory agencies, the media, public interest groups, and the public generally. This program gives them the opportunity to speak to an in-house agency where prompt investigation and, if necessary, prompt corrective or remedial action should follow.

Unauthorized copies of Quality First files, surreptitiously made and supplied to defendants, should be returned. We should not uphold their use and thus support the wrongdoers or their successors.

In this critical area of nuclear power, the majority opinion removes or at least greatly diminishes the effectiveness of a program designed to further the public safety. All the files are available to the governmental regulatory agencies; those agencies, in turn, make files available at public hearings when the public interest or safety will be served. I have faith in those agencies to review the files and bring to light anything that should properly be revealed in the public forum. The public interest groups, and apparently the majority herein, do not.

I would affirm the judgment of the district court.

McFARLAND, J., joins in the foregoing dissenting opinion.